HAWTHORNE, J., absent on account of illness, takes no part.

111 So.2d 765

**A. K. ROY, INC.**

v.

**BOARD OF COMMISSIONERS FOR the PONTCHARTRAIN LEVEE DISTRICT.**

No. 44375.

April 27, 1959.

Rehearing Denied June 1, 1959.

A. J. Kling, Jr., Gonzales, Clarence A. Frost, Reserve, for defendant-appellant.

Benton & Moseley, Baton Rouge, Sydney J. Parlongue, New Orleans, Downs & Gremillion, Alexandria, for plaintiff-appellee.

FOURNET, Chief Justice.

The defendant, the Board of Commissioners for the Pontchartrain Levee District, is appealing from a judgment of the district court overruling its exception of no right or cause of action and plea of two-year prescription and, on the merits, awarding plaintiff, A. K. Roy, Inc., the sum of $5,115 (with legal interest from date of judicial demand), being the amount determined by the trial court to be the fair

market value in 1949 of certain lands,[1] bordering on Lake Pontchartrain, between the old New Orleans-Hammond Highway and the lakeshore line, appropriated by defendant for levee purposes by resolutions adopted on December 7, 1948, and March 24, 1949. Plaintiff answered the appeal contending that the land was not subject to appropriation and, therefore, the value should be fixed as of January 20, 1958, the date upon which defendant, in its answer, asked the court to fix the value of the property, thereby for the first time seeking to legally expropriate the property, and, in the alternative that if the trial court was correct in fixing the value as of 1949, then it should have granted interest from that date rather than the date of judicial demand.

In 1948 and 1949, the defendant Levee Board, in pursuance of Article XVI, Section 8 [2] of the Louisiana Constitution, making it their mandatory duty to erect a levee along the shores of Lake Pontchartrain and, to that end, authorizing the Board to float a bond issue for two million dollars,[3] began the appropriation of lands necessary for the construction of such levee, and by resolution adopted on March 24, 1949, appropriated "all lands between the levee right of way limits on the shores of Lake Pontchartrain in Jefferson Parish and the water's edge on the Lake side of Lake Pontchartrain," which includes the property in controversy, consisting of a strip of land measuring 341 feet front along the north side of the New Orleans-Hammond Highway by a depth to the shore line of Lake Pontchartrain of 75 feet more or less on its east line and 42 feet more or less on its west line. The construction of the levee was begun by the U. S. Corps of En-

1. The property is described as follows: "That portion of ground, together with all the buildings and improvements thereon, and all of the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in the Parish of Jefferson, State of Louisiana, being part of original Lot 9 of Rosedale Plantation on a plan by A. J. Achee, Surveyor, dated October 22, 1916, copy of which is on file in the office of the clerk of Court in and for the Parish of Jefferson, according to a plan by W. F. Calongne, C. E., dated August 24, 1951. Said portion measures 341 feet front along the north side of the New Orleans-Hammond Highway by a depth to the shore line of Lake Pontchartrain of 75 feet more or less on its east line and 42 feet more or less on its west line."

2. This provision was added by Act 398 of 1946, adopted November 5, 1946. Prior thereto, the Pontchartrain Levee District was without authority to use its funds for the protection from wave-wash of property lying along the shores of Lake Pontchartrain. Op.Atty.Gen. 1946–48, p. 382 (April 23, 1946).

3. By Article XVI, Section 8(a), (Act 521 of 1952) the Board was authorized to issue additional bonds in the amount of $785,000.00, the proceeds of which were to be expended "for the construction of the works * * * as set out in the first paragraph of Section 8 of this Article."

gineers in 1949. The present suit was filed on April 10, 1957.[4]

 In support of the plea of two-year prescription in the lower court, defendant relied on the provisions of R.S. 19:2.1, subd. B,[5] Article 2630 of the Civil Code,[6] and R.S. 9:5624;[7] but, apparently conceding the correctness of the trial judge's ruling that R.S. 19:2.1, subd. B and Article 2630, R.C.C., are applicable only to actions for damages and claims resulting from a legal expropriation of·land,[8] defendant, in this court, relies solely on R.S. 9:5624. This section is equally inapposite to the case at bar, since, by its very language, it applies only "when private property is *damaged* for public purposes," but not to actions for the recovery of the value of property *taken* for public purposes.[9]

It would appear from the pleadings and argument and briefs of counsel in this court that the principal question urged in the lower court, other than the one just disposed of, was the effect of our recent decision in the case of Delaune v. Board of Commissioners, 230 La. 117, 87 So.2d 749, on the facts of the case at bar.

 Defendant has failed to meet the test enunciated in that case. Although it is conceded by plaintiff that the property was part of a large tract, which, at the time of its severance from the public domain, bordered the Mississippi River, there was

4. This case is a sequel to the case of Bourree v. A. K. Roy, Inc., 232 La. 149, 94 So.2d 13, in which the purchaser, Mrs. Bourree, sued for rescission of the sale of this property and for a return of the purchase price. The defendant in that case (plaintiff herein) filed a third-party action against the Levee Board for the assessed value of the realty appropriated. We rendered judgment against defendant on the principal demand and dismissed the third-party petition, but reserved to A. K. Roy, Inc., the plaintiff herein, the right to proceed against the Levee Board in a direct action for such redress as might be appropriate.

5. "All claims for property by, or for damages to the owner caused by the expropriation of property pursuant to R.S. 19:2 shall be barred by the prescription of two years commencing on the date on which the property was actually occupied and used for the purposes of the expropriation. Added Acts 1950, No. 238, § 1."

6. "* * * All claims for land, or damages to the owner caused by its expropriation for the construction of any public works, shall be barred by two years' prescription, which shall commence to run from the date at which the land was actually occupied and used.for the construction of the works."

7. "When private property is damaged for public purposes any and all actions for such damages are prescribed by the prescription of two years, which shall begin to run when the damages are sustained. Added Acts 1950, No. 421, § 1."

8. See, Mitchell v. New Orleans & N. E. R. Co., 41 La.Ann. 363, 6 So. 522; Amet v. Texas & P. R. Co., 117 La. 454, 41 So. 721; Scovell v. St. Louis Southwestern R. Co., 117 La. 459, 41 So. 723.

9. Obviously taking cognizance of the problem posed here, the Legislature adopted Act No. 11 of the Extra Session of 1958, § 1 specifically providing that "When lands are appropriated for levees or levee drainage purposes all claims and actions for payment under

no showing that the purpose for which the property was taken had any relation whatsoever to control of the flood waters of the Mississippi River "within the range of the reasonable necessities of the situation as produced by the forces of nature unaided by artificial causes."

Counsel for defendant, apparently realizing the weakness of his cause on this point, now argues, as an alternative basis, that he was prevented from making such a showing due to the erroneous ruling of the trial judge, and, as a further alternative, that "the entire jurisprudence as established under Article 665 and Article XVI, Section 6 of the Louisiana Constitution should be re-examined in the light of modern trends;" but bases his main argument here on the proposition that the property in dispute forms part of the bed or shore of Lake Pontchartrain, not susceptible of private ownership.

Although this issue was apparently not urged in the lower court, the defendant specifically prayed that "after due proceedings had, there be judgment rendered herein fixing the price to be paid for such lands as the trial of the matter show to be belonging to plaintiff, if any * * *," and the record is replete with evidence introduced without objection during the trial of this case below that a large portion, if not all, of the land involved in this litigation lies below the mean high-water level, thus forming either part of the bed or shore of Lake Pontchartrain.

It is immaterial whether the property be classified as sea shore,[10] which, being common property,[11] belongs to no one in particular and is insusceptible of private ownership,[12] or as the bed of a navigable lake, ownership to which is vested in the

---

Article XVI, Section 6 of the Constitution of 1921 for lands and improvements thereon actually used or destroyed for levees or levee drainage purposes shall prescribe within two years from the date on which the property was actually occupied and used or destroyed for construction of levees or levee drainage works, or, *in the case of lands and improvements heretofore so occupied and used or destroyed, such prescription shall accrue two years from November 17, 1958.* This prescription shall run against interdicts, married women, absentees, minors, and all others now excepted by law." R.S. 9:5626. (Emphasis supplied.)

10. Art. 451. "Sea shore is that space of land, over which the waters of the sea

spread in the highest water, during the winter season."

11. Art. 450. "Things, which are common, are those the ownership of which belongs to nobody in particular, and which all men may freely use, conformably with the use for which nature has intended them; such as air, running water, *the sea and its shores.*" (Emphasis supplied.)

12. Art. 482. "Among those which are not susceptible of ownership, are some which can never become the object of it; as things in common, of which all men have the enjoyment and use * * *." See, Zeller v. Southern Yacht Club, 34 La.Ann. 837; Burns v. Crescent Gun & Rod Club, 116 La. 1038, 41 So. 249.

state up to the high-water mark,[13] since in either event plaintiff would not be entitled to compensation.

 The evidence adduced at the trial in the court below, while tending to show that the property in question was below the ordinary high-water mark of the lake and subject to overflow, is inconclusive as to whether the entire or only portion of the tract was inundated by water at regular intervals or whether the property had actually become part of the bed of Lake Pontchartrain. Consequently, the record in its present state, being devoid of material facts necessary for an adjudication of this matter, the case will have to be remanded to the lower court for further proceedings.

For the reasons assigned, the judgment of the lower court is set aside, and it, is now ordered that the case be remanded to the lower court for further proceedings, giving the right to each party to amend their pleadings and to introduce such evidence as may be admissible thereunder, all in accordance with law and not inconsistent with the views herein above expressed. All cost of this appeal to await the final disposition of this case.

HAMITER, J., concurs in the decree.

HAMLIN, J., recused.

13. Milne v. Girodeau, 12 La. 324; New Orleans Land Co. v. Board of Levee Commissioners, 171 La. 718, 132 So. 121;

Miami Corporation v. State, 186 La. 784, 173 So. 315.