332 So.2d 495 (1976)
Kenneth TAYLOR, etc., Plaintiff-Appellee,
v.
BOARD OF LEVEE COMMISSIONERS OF the TENSAS BASIN LEVEE DISTRICT, Defendant-Appellant.
No. 5437.
Court of Appeal of Louisiana, Third Circuit.
May 26, 1976.
*496 Coenen & Berry by James W. Berry, Rayville, for defendant-appellant.
Reeves, Lossin & Owens by H. James Lossin, Jonesville, for plaintiff-appellee.
Before DOMENGEAUX, WATSON and GUIDRY, JJ.
WATSON, Judge.
This appeal concerns property taken for levee purposes and its value. Plaintiff, Kenneth Taylor, filed suit, individually, and as agent and attorney-in-fact for D. M. Wood, a co-owner of Ogden Plantation, against defendant, the Board of Levee Commissioners of the Tensas Basin Levee District, asking $8,600 for 3.44 acres of land in Catahoula Parish which the defendant levee district appropriated. The suit was consolidated for trial and appeal with docket No. 5438, Taylor v. Board of Levee Commissioners of Tensas Basin Levee District, 332 So.2d 500, which involves the alleged loss of a soybean crop on the parent tract of 7.4 acres caused by construction of the same levee. A separate opinion has been rendered in No. 5438.
The trial court concluded that the property is non-riparian, and the levee district did not have the right of appropriation it claimed. However, since the owners were not opposed to the taking per se, the trial court decided the matter on the levee district's alternative plea for expropriation; evaluated the property taken; and considered the damage, if any, to the remainder. The trial court concluded that the 3.44 acres were worth $1400 per acre or a total of $4,816; loss of a soybean crop on the 7.4 acre parent tract was valued at $400. Ownership of the 3.44 acres was vested in the levee district. Mineral rights were reserved to the former owners. Taylor and Wood were also given a permanent servitude of passage along the top of the levee. The defendant levee district was ordered to construct and maintain a ramp across the property expropriated to afford a permanent servitude of passage to Taylor and Wood in perpetuity in lieu of severance damages. The levee district was cast for all costs.
The Board of Levee Commissioners of the Tensas Basin Levee District has appealed in both cases and plaintiff Taylor has answered both appeals.
The levee district contends in No. 5437 that the trial court erred: in holding that the property taken was not riparian and thus not subject to appropriation; in finding the fair market value of the property taken to be $1400 per acre; and in assessing all costs to the levee district. In No. 5438, the levee district contends that the trial court erred in awarding plaintiff Taylor damages for the loss of his 1973 soybean crop.
Plaintiff Taylor's answer in No. 5437 asserts: that he should have been awarded $2500 rather than $1400 per acre and severance damages to the remainder of the tract of $10,000; that the appeal of the levee district is purely frivolous and he is entitled to damages of $5,000 under LSA-C.C.P. art. 2164 and attorneys' fees of $5,000. In No. 5438, plaintiff Taylor contends that he is entitled to an increase in damages from $400 to $1,298.70, plus $740 for depreciation of the remainder of his *497 land. However, counsel for plaintiff Taylor conceded in oral argument that his requests for increases in the awards have been abandoned.
Article 16 of the Louisiana Constitution of 1921 is entitled "Levees" and provides in § 6 as follows:
"Section 6. Lands and improvements thereon hereafter actually used or destroyed for levees or levee drainage purposes, * * *, shall be paid for at a price not to exceed the assessed value of the preceding year; * * *".
The compensation provided for in this article has been characterized as a gratuity on the theory that LSA-C.C. art. 665[1] provides a legal public servitude for the state on the shores of navigable rivers for the purpose of levees and thus the servitude does not have to be acquired with just compensation for the owners as in all other takings. A taking for levee purposes is characterized as an appropriation rather than an expropriation.[2] Appropriation by the state is restricted to riparian property which: fronted on a navigable river when the tract was first separated from the sovereign; and is reasonably necessary for levee and flood control system on that river. Delaune v. Board of Commissioners, 230 La. 117, 87 So.2d 749 (1956). A. K. Roy, Inc. v. Board of Commissioners, 237 La. 541, 111 So.2d 765 (1959). The appropriating body bears the burden of proving the riparian character of the land as a pre-requisite to acquiring the servitude. Board of Com'rs for Pontchartrain L. Dist. v. Baron, 236 La. 846, 109 So.2d 441 (1959). The trial court here concluded that the levee district did not sustain its burden of proof and thus awarded the actual rather than assessed value of the land.
The first issue is whether there is manifest error in the factual conclusion that plaintiff's land is nonriparian. The evidence shows that the property is not riparian and was not riparian in 1845 when a patent was issued from the United States. The property does not abut a navigable stream. It was taken during a 1973 flood for a ring levee to protect the Catahoula Parish Hospital and Garan Industries. The levee district does not contend that the property is riparian but rather that this court should ignore the jurisprudence in Delaune and Roy, supra, and follow the older decision of Board of Com'rs of Tensas Basin Levee Dist. v. Franklin, 219 La. 859, 54 So.2d 125 (1951), appeal dismissed per curiam, 342 U.S. 844, 72 S.Ct. 80, 96 L.Ed. 638. The Franklin decision has been criticized as "shockingly broad", 40 Tul.L.R. 263. While appropriation of riparian land was found in General Box Company v. United States, 351 U.S. 159, 76 S.Ct. 728, 100 L.Ed. 1055 (1956) not to violate the Due Process Clause of the Fifth Amendment, there is no justification for its extension to nonriparian property.
The second issue presented for decision is whether the award for the taking is excessive, as the levee district asserts. This suit was filed August 1, 1974, and the measure of compensation is provided by LSA-R.S. 19:9[3], prior to its 1974 amendment, effective January 1, 1975.
*498 There were four appraisals: R. M. Cotton and O. L. Jordan for the levee district; D. L. Cox and M. C. Gehr for plaintiff.
Both Cotton and Jordan found the property's highest and best use to be agricultural. They did not find severance damage to the remainder; their testimony and reports indicate the remainder was actually improved by the taking and construction of the levee.
Cotton and Jordan found the property's highest and best use to be agricultural. They did not find severance damage to the remainder; their testimony and reports indicate the remainder was actually improved by the taking and construction of the levee.
Cotton's report states that farm property such as this had a top price of $425 per acre prior to January, 1974. He found few comparables: the sale of the whole of Ogden Plantation, 598 acres at approximately $325 per acre in December, 1971; a sale of one acre to D. M. Wood for $500; and the sale of one-and-a-half acres by Dorothy and Joel Stevenson to Phillip and Shirley Williams for $1,670 per acre in May, 1970. Cotton stated that the latter sale is not a good comparable because the one-and-a-half acres consist of good level land bordering Highway 84 on the south and also fronting on Little River and could be classified as commercial rather than farm land. Cotton testified that the subject property was approximately 12 feet below the highway and was inaccessible before the taking and the building of the levee, which improved the property.
Jordan testified that the subject property is 11½ feet below the highway grade and has neighboring property which is level with the highway and provides more desirable ingress and egress. Jordan admitted that the area was rural, residential, but felt that the subject property was unsuitable for any type of building. Appraiser Jordan found a lack of comparables, the only one mentioned in his report is Ogden Plantation itself; his figures for this sale are slightly different from Cotton's. Jordan describes it as a 573.814 acre tract at $338.70 per acre or a total of $194,350.00. This sale resulted from a lease-purchase option dated July 28, 1965, a considerable time before the taking. The 3.44 acres taken were valued by Jordan as 1/3 the average per acre price of the Ogden Plantation sale as a whole or $212.36 an acre.
M. C. Gehr presented a more professional and complete appraisal. Gehr testified that the highest and best use of the property is for rural residential purposes, although it does not have sewerage service or a sewer system. The parent parcel from which the 3.44 acres were taken is located about one-and-a-half miles from the west city limits of Jonesville, Louisiana, on U.S. Highway 84. Seven comparables were considered in finding a value of $2,000 per acre; the value of the 3.44 acres taken being estimated by Gehr at $6,880. The remainder was valued at $1500 per acre after the taking; severance damage to the remainder being $2,030. One comparable, a tract of land adjoining the subject property on the north, was sold in April, 1974, for $1,955.00 per acre. Access to U.S. Highway 84 from this tract is better than from the subject tract and the location and utilities are also superior to that of the property in question.
Appraiser D. L. Cox arrived at the same $2,000 per acre value for the land taken for a total of $6,880 and estimated damage to the remainder at $3,000. Cox also utilized seven comparable sales.
James M. Hawkins, engineer for the Louisiana Department of Public Works, testified that the average highway elevation adjacent to the subject property is 60 feet above mean sea level, while the property *499 itself is between 53 and 54.7 feet above mean sea level. The adjoining property on the east toward the town of Jonesville is between 58.5 and 59 feet above mean sea level, making the latter property higher and more desirable.
John Arthur Routon, county supervisor for the Farmer's Home Administration in Jonesville, testified that he is familiar with the property, which was not served by an all-weather road prior to the taking and the building of the levee. There was no access to the property from the road because of a ditch; any houses proposed for this tract and the 74-acre adjacent tract would not have been approved for a home loan.
The trial court concluded that the best comparable sale was that of an adjacent tract of land from Joel Stevenson and his wife to George Griffing, Curtis P. Beard, et al, the price of that transaction being $2,070 per acre for 74.5 acres or a total of $154,215.00. The trial court found the subject property to be less valuable because of its lower elevation and smaller size and awarded $1400 per acre. It is contended that this adjustment in value by the trial court constitutes a substitution of its opinion for that of the appraisers. We disagree. The trial court arrived at a figure which reflects the evidence as a whole. No manifest error appears in the trial court's factual determination of the value of the expropriated property. A trier of fact is not required to accept the entire testimony of any one witness but can properly consider those portions of all the testimony and reports which he considers most reasonable and logical. State, Department of Highways v. McPherson, 261 La. 116, 259 So.2d 33 (1972).
Plaintiff Taylor also contends that he is entitled to severance damages to the remaining property of $10,000. Although Gehr and Cox found severance damage to the remainder, Cotton and Jordan indicated that the remainder improved in value after the taking. The trial court concluded that the remainder of the tract suffered no diminution in value as a result of the taking and that the levee itself improved the access to the property. This conclusion has a reasonable evidentiary basis and an award for severance damages is not indicated. The trial court then ordered that an access ramp be built for the landowner by the levee district ". . . in lieu of severance damages." (TR. 67), but the parties do not complain about this portion of the judgment. Although it is not in the record, there was apparently a stipulation that the levee district would provide access to the property.
In regard to the other issues, we find no error in the assessment of costs against the levee district. No tender of the value of the property has been made to the owners. LSA-R.S. 19:12;[4]Orleans Parish School Board v. Brown, 245 La. 792, 161 So.2d 274 (1964); cert. den. 379 U.S. 819, 85 S.Ct. 40, 13 L.Ed.2d 31. We also find no merit to the contention that the appeal of the levee district is purely frivolous entitling plaintiff Taylor to attorneys' fees and damages. The value of the land expropriated presents a difficult question for decision. While there is no manifest error in the trial court's evaluation, the wide discrepancy in the appraisals encouraged the levee district to seek a different appellate opinion.
Plaintiff Taylor is not entitled to attorneys' fees.
For the foregoing reasons, the judgment of the trial court is affirmed at the cost of defendant-appellant, The Board of Levee Commissioners of the Tensas Basin Levee District.
AFFIRMED.
NOTES
[1] LSA-C.C. art. 665.

"Art. 665. Servitudes imposed for the public or common utility, relate to the space which is to be left for the public use by the adjacent proprietors on the shores of navigable rivers, and for the making and repairing of levees, roads and other public or common works.
All that relates to this kind of servitude is determined by laws or particular regulations."
[2] This distinction is preserved in the 1974 Louisiana Constitution which states in Art. 1, § 4, that:

"* * * just compensation * * * shall not apply to appropriation of property necessary for levee and levee drainage purposes."
[3] LSA-R.S. 19:9.

"In estimating the value of the property to be expropriated, the basis of assessment shall be the value which the property possessed before the contemplated improvement was proposed, without deducting therefrom any amount for the benefit derived by the owner from the contemplated improvement or work."
[4] LSA-R.S. 19:12.

"§ 12. Tender of true value refused; costs
If a tender is made of the true value of the property to the owner thereof, before proceeding to a forced expropriation, the costs of the expropriation proceedings shall be paid by the owner."