710 So.2d 783 (1998)
WYNAT DEVELOPMENT COMPANY, an ordinary Louisiana Partnership, and Wynat Development Corporation
v.
The BOARD OF LEVEE COMMISSIONERS FOR the PARISH OF ORLEANS.
No. 97-C-2121.
Supreme Court of Louisiana.
April 14, 1998.
Rehearing Denied June 26, 1998.
*784 Timothy S. Madden, John E. Sudderth, Nesser, King & LeBlanc, River Ridge, for Applicant.
Alan D. Weinberger, Wade P. Webster, Middleberg, Riddle & Gianna, New Orleans, for Respondent.
KIMBALL, Justice.[*]
We granted this writ to determine whether the prescriptive period governing claims for compensation for property appropriated for levee purposes is the two year period found in La. R.S. 9:5626 or the three year period found in La. R.S. 13:5111. Finding La. R.S. 9:5626 was implicitly repealed, we hold the applicable prescriptive period is that provided in La. R.S. 13:5111, and plaintiffs' suit filed more than three years after the taking is prescribed.

FACTS AND PROCEDURAL HISTORY
Plaintiffs, Wynat Development Company and Wynat Development Corporation (Wynat), seek damages for land taken and actually used for levee purposes and severance damages related to the remaining property. For purposes of deciding the issue before us relative to prescription, we need only recite the following undisputed facts.
On July 20, 1983, pursuant to a request by the U.S. Corps of Engineers to furnish the necessary rights of way to construct the Algiers Point Levee Setback, Levee Enlargement and Slope Pavement Project, defendant, the Board of Levee Commissioners for the Parish of Orleans (Levee Board) adopted a resolution appropriating an eight-foot strip of Wynat's land located at Algiers Point for the purpose of building a cueing lane for vehicular traffic which was required to accommodate the levee setback. Notice of the appropriating resolution was given to Wynat by the Levee Board by letters dated July 26, 1983, and August 15, 1983. Attached to the July 26, 1983, letter was a map which designated the exact dimensions of the eight-foot strip of land. In brief, Wynat concedes it received written notice of the Levee Board's appropriating resolution on August 15, 1983.[1]
The Levee Board commenced construction of the levee in the summer of 1985, and the project was completed in December, 1985. Upon completion of the work, Wynat and the Levee Board could not agree on either the amount of compensation for the land actually used and destroyed or on the amount of severance and other consequential damages related to the remaining property. On April 16, 1987, Wynat filed this action seeking compensation for both the lands actually used and destroyed and for severance and consequential damages sustained by the remaining property as provided by La. R.S. 38:301(C)(1)(h).[2]
The Levee Board filed an exception of prescription asserting the three year prescriptive period provided for in La. R.S. 13:5111 was applicable to Wynat's claim and commenced upon notice of the appropriation which, here, was August 15, 1983. Hence, it argued, Wynat's suit filed on April 16, 1987, had prescribed. In opposition to the Levee Board's exception, plaintiffs argued the applicable prescriptive period was that provided by La. R.S. 9:5626 which by its terms applies to actions and claims for lands used or destroyed for levee purposes. This two year prescriptive period commenced from the date on which the property was actually occupied and used or destroyed for construction of levees which, in this case, was the date of *785 completion of the project, December, 1985. Therefore, Wynat argued, its suit filed on April 16, 1987, was timely.[3]
The trial court sustained the Levee Board's exception of prescription and dismissed Wynat's suit, reasoning:
The plaintiff had notice of the appropriation when a letter was delivered to them on 15 August 1983. Suit was filed on 16 April 1987, more than 3 years later.
The Court concludes that R.S. 13:5111 and Section 3 of the Act creating it apparently and silently repealed R.S. 9:5626 as the defendant states in its brief.
(footnote omitted).
The fourth circuit court of appeal, with one judge dissenting, affirmed the trial court's judgment,[4] reasoning that the two year prescriptive period provided for in La. R.S. 9:5626 clearly conflicts with the more recently enacted three year prescriptive period of La. R.S. 13:5111. In view of this conflict, the court of appeal concluded La. R.S. 9:5626 was repealed by the repealing clause contained in the Act which enacted La. R.S. 13:5111.[5] The court went on to conclude the three year prescriptive period contained in La. R.S. 13:5111 begins to run from the date of discovery of the taking which, here, was August 15, 1983, at the latest. Thus, the court held Wynat's suit filed on April 16, 1987, had prescribed.
This court granted plaintiffs' writ application[6] to address whether the prescriptive period that governs plaintiffs' claim for compensation is that found in La. R.S. 9:5626 or La. R.S. 13:5111 and to determine whether, applying the appropriate prescriptive period, plaintiffs' claim has prescribed.

CLASSIFICATION OF LEVEE BOARD'S ACTION
When property is needed for levee purposes, the levee districts of this state can either appropriate or expropriate the necessary property. As early as 1893, it was recognized riparian lands needed for levee purposes could be "taken" without formal expropriation procedures because such lands are subject to a servitude under La. C.C. art. 665.[7] In Peart v. Meeker, 12 So. 490 (La. 1893), this court stated:
[W]e consider the law of Louisiana too well settled to admit of further dispute to the following effect: That under article 665 of our Civil Code riparian property on navigable rivers in this state is subject to a servitude or easement imposed by law for the public or common utility, authorizing the appropriation by the government, under proper laws, of the space required for the making and repairing of levees, roads, and other public works; that the state is charged with the administration of this public servitude; that in locating and building levees she does not expropriate the property of the citizen, but lawfully appropriates it to a use which it is subject under the title itself; that in so doing she acts, not under the power of eminent domain, but in the exercise of the police power....
This right of appropriation has been characterized as the right to act first and talk later. Dickson v. Board of Com'rs of Caddo Levee Dist., 210 La. 121, 26 So.2d 474 (1946). In *786 the instant case, as both parties correctly contend, Wynat's land was appropriated by the Levee Board when it passed the appropriating resolution on July 20, 1983.[8] Thus, the Levee Board's resolution effected an appropriation of Wynat's property for levee purposes. See A.K. Roy, Inc. v. Board of Com'rs for Pontchartrain Levee Dist., 237 La. 541, 111 So.2d 765 (1959); Board of Com'rs for Pontchartrain Levee Dist. v. Baron, 236 La. 846, 109 So.2d 441 (1959); Pillow v. Board of Com'rs for Fifth Louisiana Levee Dist., 425 So.2d 1267 (La.App. 2 Cir.1982); Burdin v. Board of Com'rs for Atchafalaya Basin Levee Dist., 533 So.2d 977 (La.App. 3 Cir.1988); Taylor v. Board of Levee Com'rs of Tensas Basin Levee Dist., 332 So.2d 495 (La.App. 3 Cir.1976); and Danziger v. United States, 93 F.Supp. 70 (E.D.La.1950).
It is only when the levee district cannot appropriate or amicably acquire property needed for levee purposes that it need formally expropriate such property. La. R.S. 38:351.[9] In the instant case, the Levee Board clearly did not initiate formal expropriation proceedings pursuant to La. R.S. 38:351 et seq.

APPLICABILITY OF LA. R.S. 9:5626
Louisiana R.S. 9:5626, which Wynat argues provides the prescriptive period applicable to its claim for compensation for land actually used for levee purposes, states:
§ 5626. Actions and claims for lands and improvements used or destroyed for levees or levee drainage purposes
When lands are appropriated for levees or levee drainage purposes all claims and actions for payment under Article XVI, Section 6 of the Constitution of 1921 for lands and improvements thereon actually used or destroyed for levees or levee drainage purposes shall prescribe within two years from the date on which the property was actually occupied and used or destroyed for construction of levees or levee drainage works, or, in the case of lands and improvements heretofore so occupied and used or destroyed, such prescription shall accrue two years from November 17, 1958. This prescription shall run against interdicts, married women, absentees, minors, and all others now excepted by law.
This statute purports to apply to all claims for payment under art. 16, § 6 of the 1921 Constitution. As amended by Acts 1928, No. 165, adopted November 6, 1928, that constitutional provision stated in pertinent part:
Section 6. Lands and improvements thereon hereafter actually used or destroyed for levees or levee drainage purposes... shall be paid for at a price not to exceed the assessed value of the preceding year; provided, that this shall not apply to batture, nor to property the control of which is vested in the State or any subdivision thereof for the purpose of commerce....
In the Constitution of 1974, this 1921 constitutional provision appears, as suggested by plaintiffs, to have been continued as a statute by La. Const. art. 14, § 16(A)(12). Section 16(A)(12) provides:
Section 16. (A) Provisions Continued as Statutes. Subject to change by law or as otherwise provided in this constitution, and except as any of them conflicts with this constitution, the following provisions of the Constitution of 1921 are continued as statutes, but restricted to the same effect as on the effective date of this constitution:
...

*787 (12) Article XVI, Sections 1, 4, 6, 7, 8, and 8(a).
(Emphasis added.) This continuation as a statute, however, does not control because La. Const. art. 14, § 32 deals more specifically with the continuation of La. Const. of 1921, art. 16, § 6 and is therefore "as otherwise provided in this constitution" under La. Const. art. 14, § 16(A). That specific provision, La. Const. art. 14, § 32, states:
Section 32. The provisions of Article XVI, Section 6 of the Constitution of 1921 shall be continued as a statute, subject to change by the legislature, and the amount of compensation therein required to be paid for property used or destroyed for levee or levee drainage purposes shall be paid as provided in Section 6 of Article XVI of the Constitution of 1921 until the legislature enacts a law to effectuate Article VI, Section 42 of this constitution.

(Emphasis added.)
Thus, art. 16, § 6 of the 1921 constitution was to be continued as a statute only until the legislature enacted a law to effectuate art. 6, § 42 of the 1974 constitution. La. Const. art. 6, § 42 provides:
Section 42. (A) Compensation. Notwithstanding any contrary provision of this constitution, lands and improvements thereon hereafter actually used or destroyed for levees or levee drainage purposes shall be paid for as provided by law. However, nothing contained in this Paragraph with respect to compensation for lands and improvements shall apply to batture or to property the control of which is vested in the state or any political subdivision for the purpose of commerce. If the district has no other funds or resources from which the payment can be made, it shall levy on all taxable property within the district a tax sufficient to pay for property used or destroyed to be used solely in the district where collected.
(B) Appropriation. Nothing in this Section shall prevent the appropriation of such property before payment.
This interpretation is supported by the placement in the 1974 constitution of those provisions that continued the 1921 constitutional provisions and the explanation of them given in the constitutional debates. Both provisions which continued the 1921 constitutional provision as a statute are located in that article of the 1974 Constitution entitled, "Transitional Provisions." Explaining what is now La. Const. Art. 14, § 32, which continued the 1921 provision until the legislature acted to effectuate the new art. 6, § 42, Delegate Lanier stated:
Mr. Chairman and fellow delegates, if you refer to Section 43 as adopted by local government, you will see that we made a major change in the law with reference to the compensation paid for the exercise of the riparian servitude. The present law is that you're paid the assessed value for the last preceding year. What we have done is provided that in the future, after the effective date of this constitution, that the legislature shall have the right to determine what compensation should be paid. Because of the fact that the present provisions for compensation are constitutional rather than statutory, the Committee on Local and Parochial Government felt that a special transitional schedule provision was necessary to insure and make certain that we did not have an hiatus in our law during the period of time between the effective date of the new constitution and such time as the legislature in its wisdom may act in fixing the amount of compensation. So we provided this provision that says that the present law as stated in the 1921 Constitution, that is, that the landowner would be paid the assessed evaluation for the last preceding year, will remain in effect until such time as the legislature acts. Now, if we did not have such a provision, it is the feeling of the Committee of Local and Parochial Government that an argument could be made that since the constitution provides that the compensation will be as provided by the legislature, and that since here in this convention we are physically lifting the provisions of Article XVI, Section 6 out and transporting them to the statutes, that this is not in fact a legislature fixing the compensation and therefore, such a provision would not be valid without a special schedule provision *788 showing our intention to do this. This is the reason to do this so that no one will be unnecessarily hurt during the transitional period between such time as the constitution goes into effect and the legislature acts. Now, if there is a special session of the legislature that does enact such a law prior to the time that we had the effective date, then, of course, that law will take effect on the effective date, and there would be no necessity for such a transitional provision as this. But, in the absence of such action if we do not provide this, it is the feeling of many of us that we will have an hiatus in the law, and persons whose property is exercised by the riparian servitude, if the servitude is used on their property, may be in a position where they cannot get anything for the use of their land; and this is a situation we thought should be avoided.
Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts, Vol. 9, 121st Days Proceedings, p. 3470 (January 18, 1974).
Obviously, then, art. 16, § 6 of the 1921 constitution continues to be a valid statutory provision only if the legislature has not acted to effectuate art. 6, § 42 of the 1974 constitution. If the legislature has not yet enacted any statute providing for compensation for lands and improvements actually used or destroyed for levees or levee drainage purposes, then La. Const. of 1921, art. 16, § 6 is still valid legislation to determine the amount of such compensation. If, however, the legislature has enacted such a provision, then art. 16, § 6 of the 1921 constitution is no longer a viable statute upon which plaintiffs can rely. Concomitantly, La. R.S. 9:5626, providing a prescriptive period for the cause of action provided by art. 16, § 6 of the 1921 constitution, is rendered meaningless and implicitly repealed.
In Act 314 of 1978, the legislature did in fact enact a statute to effectuate La. Const. art. 6, § 42. The stated purpose of that Act was:
[t]o amend and reenact Section 281 of Title 38 of the Louisiana Revised Statutes of 1950, relative to levees and levee drainage, to provide for measure of compensation for land and improvements, Orleans Parish excepted, actually used, damaged or destroyed for levees or levee drainage purposes, and otherwise to provide with respect thereto.
(Emphasis added.) This statute, effective July 10, 1978, provided for the first time since the adoption of the 1974 constitution a rate of compensation to be paid for lands and improvements actually used, damaged or destroyed for levees or levee drainage purposes different from the old assessed value method found in La. Const. of 1921 art. 16, § 6. Although the first version of this statute excepted Orleans Parish from the new "fair market value" scheme of compensation for land and improvements actually used, damaged or destroyed for levees or levee drainage purposes, the legislature removed this exception from La. R.S. 38:281 the following year in Act 676 of 1979, effective July 18, 1979, which described Act 314 of 1978 as containing "vague and indefinite" provisions particularly with respect to lands used or destroyed for levees and levee drainage purposes for which fair market value must be paid. The intent to continue La. Const. of 1921, art. 16, § 6 as only a transitional provision until the legislature enacted a new measure of compensation, combined with the repealing provision in Act 676 of 1979, which stated that "[a]ll laws or parts of laws in conflict herewith are hereby repealed," show Act 676 of 1979 effectively repealed art. 16, § 6 of the 1921 constitution in its entirety. The new statute instructed all Louisiana parishes to pay for lands and improvements actually used, damaged, or destroyed for levees and levee drainage purposes at fair market value to the full extent of the loss and directly conflicted with the former "assessed value" measure of compensation utilized by the 1921 constitution. See Givens v. Fifth Dist. Levee Board, 445 So.2d 781 (La.App. 3 Cir.1984). See also Historical and Statutory Notes, Constitution Ancillaries, Const.1921, Art. 16, sec. 6 (West 1996) (Pursuant to the statutory revision authority of the Louisiana State Law Institute, La. Const. of 1921, art. 16, § 6, is no longer set forth as live text and is noted to be "Repealed by implication.").
*789 Louisiana R.S. 9:5626, the prescriptive statute Wynat claims governs its suit for compensation, was enacted into law by Act 11 of an extra session of the 1958 legislature. Louisiana R.S. 9:5626 explicitly refers to "all claims and actions for payment under Article XVI, Section 6 of the Constitution of 1921." As such, it was enacted to clarify the law as to when an action arising under La. Const. of 1921, art. 16, § 6 prescribed. A.K. Roy, Inc. v. Board of Com'rs for Pontchartrain Levee Dist., 237 La. 541, 111 So.2d 765 (1959). As discussed above, however, the cause of action for payment of the assessed value of property appropriated for levees or levee drainage purposes has been repealed by the legislature's enactment of a cause of action for payment of the fair market value to the full extent of the loss when lands are actually taken, used, damaged or destroyed for levee or levee drainage purposes. Wynat has, in fact, asserted a cause of action under this new compensation scheme found in La. R.S. 38:301; not one under art. 16, § 6 of the 1921 constitution. Therefore, by its own terms, La. R.S. 9:5626 does not apply to Wynat's claim. Moreover, La. R.S. 9:5626 will never apply to claims for compensation for lands appropriated for levees or levee drainage purposes because the legislature repealed the cause of action for all claims and actions for payment under La. Const. of 1921, art. 16, § 6 upon which the prescriptive period in La. R.S. 9:5626 was based. Without a cause of action to which it might apply, this prescriptive period is meaningless. Hence, in light of the unique purpose fulfilled by La. R.S. 9:5626 relative to claims under La. Const. of 1921, art. 16, § 6, and the fact art. 16, § 6 of the 1921 constitution is no longer needed as a transitional statute and was repealed by the legislature, we hereby conclude La. R.S. 9:5626, which provides the prescriptive period specifically applicable to claims under this provision, has also been repealed by implication and cannot be applied to this case.

APPLICABILITY OF LA. R.S. 13:5111
Pursuant to a comprehensive reenactment in 1985, the substance of La. R.S. 38:281, which provided authority for levee districts to appropriate land needed for levee purposes and for compensation at the fair market value of such land, was included in La. R.S. 38:301 by Act 785 of 1985. It is La. R.S. 38:301 that today gives the Levee Board the authority to appropriate Wynat's land by resolution. La. R.S. 38:301, however, contains no prescriptive period governing claims for compensation for property appropriated by resolution for levee purposes. The Levee Board points to La. R.S. 13:5111 as the governing prescriptive period. That statute provides:
§ 5111. Appropriation of property by state, parish, municipality or agencies thereof; attorney, engineering and appraisal fees; prescription
A. A court of Louisiana rendering a judgment for the plaintiff, in a proceeding brought against the state of Louisiana, a parish, or municipality or other political subdivision or an agency of any of them, for compensation for the taking of property by the defendant, other than through an expropriation proceeding, shall determine and award to the plaintiff, as part of the costs of court, such sum as will, in the opinion of the court, compensate for reasonable attorney fees actually incurred because of such proceeding. Any settlement of such claim, not reduced to judgment, shall include such reasonable attorney, engineering, and appraisal fees as are actually incurred because of such proceeding. Actions for compensation for property taken by the state, a parish, municipality, or other political subdivision or any one of their respective agencies shall prescribe three years from the date of such taking.

B. The rights of the landowner herein fixed are in addition to any other rights he may have under the constitution of Louisiana and existing statutes, and nothing in this Part shall impair any constitutional or statutory rights belonging to any person on September 12, 1975.
(Emphasis added.)
This statute clearly purports to apply to a suit brought for compensation for the taking of property by the state, a parish, municipality or other political subdivision other than through an expropriation proceeding. Louisiana R.S. 13:5102(B) defines a political subdivision as any parish, municipality, special *790 district, school board, sheriff, public board, institution, department, commission, district, corporation, agency, authority, or an agency or subdivision of any of these, and other public or governmental body of any kind which is not a state agency. As a "special district" of the state, the Orleans Levee District is a political subdivision under this definition. See also La. R.S. 38:281(6) defining "Levee district" as "a political subdivision of this state organized for the purpose and charged with the duty of constructing and maintaining levees, drainage, and all other things incidental thereto within its territorial limits." Moreover, as discussed previously, a taking of riparian property through the adoption of a resolution by a levee board is an appropriation, not an expropriation. Hence, the statute, by its own terms, clearly applies to the appropriation of Wynat's property by the Levee Board.
Having determined La. R.S. 13:5111 applies by its own terms to an appropriation by resolution for levee purposes, we may make no further inquiries into the legislative intent behind the statute unless its application leads to absurd consequences. La. C.C. art. 9 ("When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature."). Wynat argues the application of La. R.S. 13:5111 to this case leads to absurd consequences when read together with La. R.S. 38:301, the statute that gives the Levee Board the authority to appropriate Wynat's land for levee purposes. Specifically, Wynat contends the commencement of prescription upon notice of the appropriating resolution creates an irreconcilable conflict with La. R.S. 38:301(C)(2)(a) because that statute provides, "[t]he compensation due under the provisions of this Subsection shall be paid to the owner within one year after the actual taking, use, damage, or destruction of the property in accordance with the provisions of this Section." Wynat's argument is that if it files within the three year period provided by La. R.S. 13:5111, but prior to one year after the actual taking, use, damage, or destruction of its property as specified in La. R.S. 38:301(C)(2)(a), it will be met with an exception of prematurity. We find this argument to be without merit.
Under the terms of La. R.S. 13:5111, Wynat's claim for compensation prescribes three years from the date of the taking. The lower courts determined, and the parties agree, the taking, as that term is used in La. R.S. 13:5111, is the date Wynat received notice of the passage of the appropriating resolution. For purposes of this case, we need not evaluate the correctness of those determinations and may assume prescription commenced on this date because Wynat's claim is prescribed regardless of whether the applicable date is the date of the passage of the appropriating resolution or the date Wynat received notice of the resolution. Wynat concedes it had notice of the adoption of the resolution on August 15, 1983. Therefore, prescription commenced on August 15, 1983, at the latest.
Under the terms of La. R.S. 13:5111, Wynat had three years from the date of the taking of its land to file its suit for compensation. Although the taking authority has an obligation to compensate the landowner from the date of the taking, i.e., here, the date Wynat had notice of the passage of the appropriating resolution, which obligation the landowner must seek to enforce within the prescriptive period provided by La. R.S. 13:5111, La. R.S. 38:301(C)(2)(a) merely gives the Levee Board a term for payment. Thus Wynat could validly file suit on the day its property was taken, and a judgment could be rendered which would: (1) set the amount of compensation due pursuant to La. R.S. 38:301(C)(1)(b), which allows severance damages to be computed "taking into consideration the effects of the completion of the project in the manner proposed or planned," and would (2) set the time for payment under La. R.S. 38:301(C)(2)(a). If the Levee Board does not pay after the one year period in La. R.S. 38:301(C)(2)(a) has accrued, then the landowner would be entitled to execute on the judgment subject to the provisions in La. R.S. 38:301(C)(2)(e).[10] When La. R.S. *791 38:301(C)(2)(a) and La. R.S. 13:5111 are read in pari materiae, it becomes clear that filing a suit for compensation under these circumstances is not premature within the meaning of La. C.C.P. art. 423.[11] The right to enforce some obligations does not accrue until the occurrence of a term for performance or suspensive condition. In these cases, under Article 423, an action brought to enforce this type of obligation, seeking, for example, damages, shall be dismissed as premature if it is brought prior to the right to enforce it has accrued. In other words, the obligee cannot even file suit until the occurrence of the term or suspensive condition. In the instant situation, however, the legislature enacted La. R.S. 13:5111 which specifically allows, and indeed requires, a landowner to file his suit seeking to enforce the taking authority's obligation to compensate him under La. R.S. 38:301(C)(1)(a) within three years from the passage of the appropriating resolution. Thus, the landowner's right to enforce the obligation, i.e., to file a suit to determine damages owed, and to obtain a judgment awarding damages, accrues with the passage of the resolution and not with the occurrence of any term or suspensive condition. Understood in this manner, the application of the prescriptive period in La. R.S. 13:5111 does not lead to absurd consequences when read together with La. R.S. 38:301.[12]
Because the terms of La. R.S. 13:5111 are clear and unambiguous and their application to cases such as the one presented here leads to no absurd consequences, we conclude La. R.S. 13:5111 applies to claims for compensation for land appropriated by resolution for levee purposes. The prescriptive period for Wynat's claim for compensation commenced upon the taking of its property by the Levee Board, which, here, is assumed to be August, 15, 1983, the date Wynat received notice of the passage of the appropriating resolution. Wynat's claim for compensation for land appropriated by the Levee Board prescribed three years from this date pursuant to La. R.S. 13:5111. Accordingly, its suit filed on April 16, 1987, was prescribed and we therefore affirm the lower courts' decisions sustaining defendant's exception of prescription.
AFFIRMED.
LEMMON, J., dissents and assigns reasons.
LEMMON, Justice, dissenting.
Prior to 1974, the cause of action for appropriation was provided by La. Const. (1921) art. XVI, § 6, which required payment of compensation when property has been appropriated for levee purposes and set the standard for determining such compensation "at a price not to exceed the assessed value of the preceding year." In 1958, the Legislature enacted La.Rev.Stat. 9:5626 to provide a special two-year prescriptive period governing such an action for compensation under La. Const. art. XVI, § 6, commencing on the date the property was actually occupied and used.
The majority concludes the 1974 Constitution and subsequent legislation abolished the cause of action for payment of property appropriated *792 for levee purposes created by former La. Const. art. XVI, § 6 and established a new cause of action with a different prescriptive period. I disagree.
What actually occurred in 1974 is that the framers of the new constitution continued in effect the constitutional cause of action for payment, but delegated to the Legislature the authority to set the standard for determining such compensation. Three provisions of the 1974 constitution are pertinent:
1. La. Const art. XIV, § 16(A)(12), a general provision that continued as a statute all the provisions of La. Const. (1921) art. XVI, § 6.
2. La. Const. art. XIV, § 32, a specific provision that also (a) continued the provisions of the La. Const. (1921) art. XIV, § 6 as a statute "subject to change by the legislature" and (b) further continued the standard in the 1921 Constitution for determining the amount of compensation "until the legislature enacts a law to effectuate Article VI, Section 42 of this constitution."
3. La. Const. art. VI, § 42, a provision that compensation "shall be paid for as provided by law," thereby authorizing the Legislature to fix the standard for determining compensation.
The latter two provisions recognized the authority of the Legislature to fix the standard for determining compensation for appropriation of property used for levee purposes and further maintained the existing standard until the Legislature acted. The framers thus provided that during the interim between the effective date of the 1974 Constitution and the time the Legislature enacted such a statute fixing the new standard for determining the "amount of compensation," the standard set forth in the 1921 Constitution would apply. The Legislature enacted such a statute, La.Rev.Stat. 38:281, in 1978 and in 1979.
In my view, the time limitation in La. Const. art. XIV, § 32 was intended only to apply to the standard for determining the "amount of compensation," which the framers authorized the Legislature to fix by subsequent act. In so doing, the framers did not a set a time limit on the vitality of the cause of action for compensation under the 1921 Constitution which had been continued as statute. Even after the Legislature acted to fix the standard for determining the amount of compensation, the cause of action under La. Const. (1921) art. XVI, § 6 (and continued as a statute) remained viable and subject to the prescriptive period especially enacted for that cause of action.
The framers of the 1974 Constitution and the redactors of the subsequent revised statute did not expressly repeal the cause of action established by La. Const. (1921) art. XVI, § 6 and continued as a statute by La. Const. art. XIV, § 16(A)(12). Moreover, implied repeal is highly disfavored. In my view, the majority erred in holding that the specific prescriptive period, which was designed to cover the issue presented here, no longer applies because the underlying cause of action was implicitly repealed in 1974 by La. Const. art. VI, § 32, effective upon the enactment of La.Rev.Stat. 38:281 in 1978 and in 1979.
NOTES
[*] JOHNSON, J., not on panel. See Rule IV, Part 2, Section 3.
[1] Original Brief on Behalf of Applicants/Plaintiffs, Wynat Development Company, an Ordinary Louisiana Partnership, and Wynat Development Corporation, p. 1.
[2] La. R.S. 38:301(C)(1)(h) provides:

The measure of compensation for lands and improvements taken or destroyed for levee and levee drainage purposes by way of a permanent levee servitude shall be the fair market value of the property taken or destroyed before the proposed use of the property or construction of the levee facilities, without allowing any change in value caused by the construction of the levee facilities. The measure of damages, if any, to the remaining property of the owner by reason of the use or destruction of a portion of the property is determined on a basis of immediately before and immediately after the use or destruction of the property for levee drainage construction, taking into consideration the effects of the completion of the project in the manner proposed or planned.
[3] In brief, the Levee Board concedes Wynat's claim for compensation is not prescribed if La. R.S. 9:5626 is applicable, stating, "The case is not prescribed if Acts 1958, Ex. Sess. No. 11, § 1 (La. R.S. 9:5626) applies." Original Brief of Defendant/Respondent Orleans Levee Board, p. 2.
[4] Wynat Development Co. v. Board of Levee Com'rs for Parish of Orleans, 96-1983 (La.App. 4 Cir. 5/30/97), 696 So.2d 163.
[5] Section 3 of Acts 1975, No. 434, part of the Act which enacted La. R.S. 13:5111, specifically provided that "[a]ll laws or parts of laws in conflict herewith are hereby repealed."
[6] Wynat Development Co. v. Board of Levee Com'rs for Parish of Orleans, 97-2121 (La.11/21/97), 703 So.2d 634.
[7] La. C.C. art. 665 states:

Servitudes imposed for the public or common utility, relate to the space which is to be left for the public use by the adjacent proprietors on the shores of navigable rivers, and for the making and repairing of levees, roads and other public or common works.
All that relates to this kind of servitude is determined by laws or particular regulations.
[8] Both lower courts characterized Wynat's suit for compensation as an inverse condemnation action. For purposes of determining whether Wynat's suit is prescribed, however, we need only classify the Levee Board's action as an appropriation for levee purposes.
[9] La. R.S. 38:351 states:

Notwithstanding any other law to the contrary, and in addition to the methods and procedures for acquisition or utilization of servitudes for levee and related purposes by levee districts and levee and drainage districts, whenever any levee district or levee and drainage district cannot appropriate or amicably acquire immovable property needed for levee purposes, including but not limited to flooding and hurricane protection purposes, the levee district or levee and drainage district may acquire the property by expropriation prior to judgment in accordance with the provisions of this Part. The method of expropriation provided by this Part shall be authorized for corporeal property and servitudes and for both riparian and nonriparian property.
[10] La. R.S. 38:301(C)(2)(e) provides:

The owner shall be compensated as provided in this Section only when and if, in its discretion, the legislature, the levee board, or the federal government, appropriates the funds therefor.
[11] La. C.C.P. art. 423 discusses prematurity as follows:

An obligation implies a right to enforce it which may or may not accrue immediately upon the creation of the obligation. When the obligation allows a term for its performance, the right to enforce it does not accrue until the term has elapsed. If the obligation depends upon a suspensive condition, the right to enforce it does not accrue until the occurrence or performance of the condition.
When an action is brought on an obligation before the right to enforce it has accrued, the action shall be dismissed as premature, but it may be brought again after the right has accrued.
[12] Wynat argues the doctrine of contra non valentem agere nulla currit praescriptio applies to suspend running of prescription under La. R.S. 13:5111 because it was legally barred from enforcing its right to compensation until one year after completion of the project because that is when its damages could be ascertained and the Levee Board would be forced to pay the compensation due them under La. R.S. 38:301(C)(1)(a). As discussed above, Wynat was not barred from bringing its suit and reducing its claim to a judgment at any time after the adoption of the appropriating resolution. Contra non valentem, therefore, is not available to Wynat to suspend the running of prescription in this case.