HIGGINBOTHAM, J.
UThe issue to be resolved in this case is the amount of compensation due to a Louisiana landowner and business when a portion of property, including soil from beneath the surface of the property, is effectively appropriated pursuant to a permanent levee servitude for the purpose of constructing, operating, and maintaining a levee for a hurricane protection project. The issue involves a res nova application of the limiting effects,, if any, of the 2006 constitutional amendments to La. Const, art. VI, § 42, and La. Const, art. I, § 4, purportedly conforming Louisiana takings law with federal law when property is taken for levee and hurricané protection purposes.

FACTS AND PROCEDURAL HISTORY

The parties do not dispute that on January 10, 2011, the Board of Commissioners of the South Lafourche Levee District (“Levee District”) adopted Resolution 11-01 (the “Resolution”), appropriating a permanent levee servitude affecting certain tracts of land located on the west bank of Bayou Lafourche, which the Levee District had determined was an area that was susceptible to storm surge and flooding events. The purpose of the appropriation was to upgrade and increase the size of the existing permanent levee servitude for flood protection in the Larose to Golden Meadow, Louisiana, Hurricane Protection Project area. The Resolution gave the Levee District' the right to “construct, operate and maintain levees, berms, drainage or borrow canals or ditches and other flood control works including the right to cut away, dredge or remove spoil or earth therefrom and for the deposit of same as may be necessary[.]”
Landowners that were affected by the appropriation of the permanent servitude were notified by letter dated the same date that the Levee District passed the Resolution. In the letter, the landowners were advised that the Levee District would soon begin the process of “removing earthen material” from the appropriated property and demanded that all landowners “immediately cease and desist performing any and all ’activities upon the property appropriated.” The letter further explained that, as required by state law, the Levee |aDistrict would pay each affected landowner the fair market value for the appropriated property, as soon as that amount was determined.
One of the landowners to receive the Levee District’s letter was Chad M. Jar-reau, from Cutoff, Louisiana. Mr. Jarreau owns a 17.1 acre tract’ of land (Tract- 288, hereafter referred to as the “Jarreau tract”) that was located partially within the Levee District’s permanent servitude that had been appropriated pursuant to the Resolution-. Mr. Jarreau and his wife live in a residence near Highway 3235 at the front portion of the-Jarreau tract. He operates a dirt excavation and hauling business known as Bayou Construction & Trucking Co., L.L.C. (“Bayou Construction”) over the remainder of the Jarreau tract, which backs up to an industrial water canal. Only the rear portion of the Jarreau tract, adjacent to the canal and measuring slightly'under'one acre at .913 acres, was within the Levee District’s appropriated permanent servitude.
It is undisputed that in order to fulfill contract obligations for Bayou Construction, Mr. Jarreau excavated dirt from the appropriated area both before and after he received the Levee District’s letter. It is also undisputed that when the Levee District tendered a check .totaling $1,326.69 *219 for the appropriated Jarreau tract, Mr. Jarreau and his wife rejected the offer. Because Mr. Jarreau did not cease his excavating activities on the appropriated land, the Levee District filed a petition on May 19, 2011, seeking to' enjoin Mr. Jar-reau from further excavation or removal of dirt from the appropriated permanent servitude on the Jarreau tract. The Levee District also sought monetary damages for Mr. Jarreau’s “wrongful” excavation. Mr. Jarreau answered the lawsuit and filed a reconventional demand against the Levee District, seeking just compensation for the full extent of his loss of the Jarreau tract that had been taken by the Levee District. While Mr. Jarreau never disputed the Levee District’s authority to appropriate the Jarreau tract, he specifically sought compensation for severance damages, economic/business losses, general damages for mental anguish, loss of use, inconvenience, and loss of enjoyment, costs, and statutory attorney fees. Bayou Construction 1 intervened in the lawsuit, joining in Mr. Jarreau’s reconventional demand against the Levee District.[1]
The trial court signed an order on June 27, 2011, issuing a preliminary injunction that prohibited Mr. Jarreau from further removal of dirt on the' appropriated levee servitude across the Jarreau tract.[2]' On September 9 and 10, 2014, a bench trial was held on the merits of the Levee District’s main demand for damages, as well as Mr. Jarreau and Bayou Construction’s reconventional demand for just compensation and damages. Several expert witnesses testified regarding the value of the Jarreau tract- and the value of the dirt taken from the Jarreau tract; After the parties submitted post-trial briefs, the-trial court rendered judgment oh December 1, 2014. As to the main demand, the trial court awarded damages to the Levee District in the amount of $16,956.00 for the dirt that Mr. Jarreau excavated after the Jarreau tract had been appropriated. The trial court awarded Mr. Jarreau $11,869.00 as just compensation for the Jarreau tract taken by the Levee District’s permanent levee servitude.[3] The trial- court further awarded Mr. Jarreau and Bayou Construction $164,705.40 for economic and business losses related to the taken Jarreau tract, along with attorney fees of $43,811.85, expert witness fees, costs, and interest.
The Levee District appealed, maintaining that the trial court erred in concluding that any compensation was owed for appropriation of property needed for a hurricane protection project, citing the 2006 amendments to La. Const, art.' I, § 4(G). Alternatively, the Levee District argues that the trial court erred in failing to apply the curren^ statutory definitions of “fair market value” and “full extent of the loss” pursuant to La. R.S. 38:301 and 38:281(3) Land (4), asserting' that just compensation does not include economic loss. The Levee District also urges, for the first time in this court, a peremptory exception raising the objection of no cause of action, submitting that the law extends no remedy to Mr. Jarreau or Bayou Construction for *220 the appropriated property. Mr. Jarreau and Bayou Construction answered the Levee District’s appeal, seeking reversal of the damage award to the Levee District, as well as an increase in the attorney fees awarded by the trial court and additional attorney fees for this appeal.

PEREMPTORY EXCEPTION OF NO CAUSE■ OF ACTION

Under La.Code Civ. P. art. 2163, an appellate court has the discretion to decide whether to consider a peremptory exception filed for the first time at the appellate level, as long as the exception is pleaded prior to submission of the case for a decision and proof of the ground of the exception appears of record. Furthermore, an appellate court may notice sua sponte, on its own motion, that a party has failed to state a cause of action. La.Code Civ. P. art. 927(B). However, our review of the Levee District’s exception of no cause of action filed in this court reveals that' it presents the very same question of law as raised on the merits of the Levee District’s appeal — ie., whether the law extends a remedy for compensation when a landowner’s property is appropriated pürsuant to a permanent levee servitude for the purpose of a hurricane protection project. Bécáuse the exception involves the same issue as presented on the merits, it is unnecessary to discuss the exception separately. See Allen v. Shreveport Theatre Corp., 218 La. 1008, 51 So.2d 607, 609 (1951).

STANDARD OF REVIEW

In this action regarding just compensation- for appropriated property and for damages, the trial court’s factual determinations as to the value of property and entitlement to any type of damages will not be disturbed on review in the absence of manifest error. West Jefferson Levee District v. Coast Quality Const. Corp., 93-1718 (La.5/23/94), 640 So.2d 1258, 1277, cert. denied, 513 U.S. 1083, 115 S.Ct. 736, 130 L.Ed.2d 639. Similarly, where the-| (¡testimony of experts and witnesses is contradictory and the trial court decides to give more or less weight to the testimony of certain experts and witnesses, the trial court’s findings cannot be overturned unless manifest error appears in the record. Id. Opinions of experts regarding valuation are advisory and are used only to assist the trial court in determining the amount, of compensation due. The weight to be given to expert testimony is determined by the trier of fact based on the professional qualifications and experience of the expert, the facts and. studies upon which the opinion is based, the familiarity with the locality of the property involved, and the possible bias of the witness in favor of the side for whom he testifies. Id. Where the experts disagree as to the value of the land taken, the trial court has much discretion in evaluating and determining the weight to be given to each expert.. Id.
Furthermore, those factual findings made by the trial court that do not directly involve the valuation of the property or the credibility of the appraisers are also entitled to deference, in accordance with the jurisprudential rules regarding the standard of review of factual findings. See Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La. 1993). A court of appeal, after reviewing the entire record, may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong. Id. Where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable infer- *221 enees of fact should not be disturbed upon review where conflict exists in the testimony. Id., 617 So.2d at 882-83. However, where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, .that a reasonable factfinder would not credit the witness’s story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Id. Moreover, an appellate court will conduct a de novo review of the facts and not give deference to a trial court’s findings of |7fact where the trial court has made erroneous conclusions of law. West Jefferson Levee District, 640 So.2d at 1278.

STATUTORY ANALYSIS

The Levee District’s primary argument in this case is one of statutory construction. In order to resolve the question of what “just compensation” is due in this case involving appropriated property for levee/hurricane. protection purposes, we must look at our primary source of law— the legislation. The Levee District maintains that the' trial court failed to take into consideration the difference between an “appropriation” and an “expropriation,” as well as changes in the constitutional provisions concerning private property taken for the public purpose of a permanent levee servitude.[4]
When we are called upon to review constitutional changes to legislative provisions, we must follow certain guidelines for statutory interpretation, as outlined by the Louisiana Supreme Court in Louisiana Municipal Association v. State, 2004-0227 (La.1/19/05), 893 So.2d 809, 836-37:
Questions of law, such as the proper interpretation of a statute, are reviewed by this court under the de novo standard of review. After our review, we “render judgment on the record, without deference to the legal conclusions of the tribunals below.” ...
“Legislation is the solemn expression of legislative will, and therefore, the interpretation of a law involves primarily the search for the legislature’s intent.” The interpretation of a statute starts with the language of the statute itself. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the intent of the legislature.
The. laws of statutory .construction require that laws on the same subject matter must be interpreted in reference to each other. The legislature is presumed to have acted with deliberation and to have enacted a statute in light of the preceding statutes involving the same subject matter....
A statute must be “applied and interpreted in a manner that is logical and consistent with the presumed fair purpose and intention the Legislature had in |senacting it.” In addition, “courts are bound to give effect to all parts of a statute and cannot give a statute an interpretation that makes any .part superfluous or meaningless, if that result can be avoided.” [Internal citations omitted.]
Moreover, where two statutes deal with the same subject matter, they should be harmonized if possible, as it is the duty of the courts, in the construction of statutes, *222 to harmonize and reconcile laws. Oubre v. Louisiana Citizens Fair Plan, 2011-0097 (La.12/16/11), 79 So.3d 987, 997, cert. denied, — U.S. -, 133 S.Ct. 30, 183 L.Ed.2d 677 (2012). However, if there is a conflict, the statute specifically directed to 'the matter at issue must prevail as an exception to the statute more general in character. Id. In accord with these rules on statutory analysis, we start with the language of the constitutional and statutory provisions at issue. ’

CONSTITUTIONAL AND STATUTORY PROVISIONS

After the devastation wrought by major hurricanes in 2005, the Louisiana Legislature proposed amendments to the state’s constitution regarding, among other things, property rights for land that is used or destroyed in the “construction, enlargement, improvement, or modification of federal or non-federal hurricane protection projects,” La. Const, art. I, § 4(G) and La. Const, art. VI, § 42(A). Pursuant to 2006 La. Acts, No. 851, § 1, 2006 La. Acts, No. 853, §§ 1 and 2, and 2006 La. Acts, No. 859, § 1, the proposal to amend articles I and VI of the Louisiana Constitution was submitted to the electors of the State of Louisiana and was ratified by them at a statewide'election held on September 30, 2006. The governor proclaimed the adoption of the amendments on October 10, 2006. The amended versions of articles I and VI became effective on October 31, 2006, well before the Resolution at issue in this case was passed. See La. Const, arts. I, § 4, and VI, § 42, “Historical Notes.”
The thrust of the constitutional amendments was to retain the law on just compensation for property taken or damaged by the state or its political subdivisions for public purposes. However, the amendments added an additional requirement that compensation paid" for the taking of, or loss or damage to, property rights affected by hurricane protection or flood Iscontrol activities, including but not limited to levees and canals, shall be limited to and governed by the amount and circumstances required by the Fifth Amendment of the Constitution of the United States of America. See Louisiana Bill Digest, Amendment Summary, 2006 Reg. Sess. S.B.-27. ' ' !
The prohibition against governmental takings of property, is found in both the federal and. state constitutions. The Fifth Amendment of the U.S. Constitution, made applicable to the states pursuant to the Fourteenth Amendment, provides: “No person shall ... be deprived of life, liberty or property without due process of law; nor shall private property be taken for public use, without just compensation.” The definition of “just compensation” required by the Fifth Amendment has repeatedly been held to be measured by “the market value of the property at the time of the- taking.” ’ Horne v. Department of Agriculture, — U.S. ——,-, 135 S.Ct. 2419, 2432, 192 L.Ed.2d 388 (2015) (quoting United States v. 50 Acres of Land, 469 U.S. 24, 29, 105 S.Ct. 451, 454, 83 L.Ed.2d 376 (1984)).
The pertinent provisions in the Louisiana Constitution- regarding governmental takings, of property are found in article I, § 4, entitled “Right to Property,” and article -VI, § 42, entitled “Compensation for ’ Property Used or Destroyed; Tax.” Pursuant to the current -version of article I, § 4(B)(1), incorporating-the 2006 amendments, “[pjroperty shall not be taken or damaged by thé state or its political subdivisions except, for public purposes and with just compensation, paid to the *223 owner or into the court for his benefit.”[5] (Emphasis added.) “[P]ublic purposes” is limited to an exclusive list in the article, but' includes “[d]rainage, flood control, levees, coastal and navigational protection and reclamation for the benefit of the public generally.” La. Const, art. I, § 4(B)(2)(iii) (emphasis added).
| inPrior to the 2006 amendments, article I, § 4(B)- further provided, “[i]n every expropriation, a party has the right to trial by jury to determine compensation, and the owner shall be compensated to the full extent of his loss.” (Emphasis added.) The phrase “compensated to the full extent of his loss” was a change in the law when it was added to the 1974 Constitution, thereby broadening the measure of damages and allowing landowners to remain in an equivalent financial position to that which they enjoyed before the taking. See West Jefferson Levee District, 640 So.2d at 1271, n. 20. Thus, full compensation pursuant to the 1974 Constitution included things like inconvenience and loss of profits from the takings of business premises so that landowners were compensated for their loss, not merely the loss of their land. Id. But the re-wording of article I, § 4(B) in the 2006 constitutional amendments resulted in the removal of the phrase, “compensated to the full extent of his loss.” We view this as an intentional return to the previous law providing that a landowner could receive only the fair market value and any severance damages for property that had been taken by the government.
We note, however, that La. Const, art. I, § 4(E) additionally provides that “[t]his Section shall not apply to appropriation of property ■ necessary ■ for levee and levee drainage purposes.” (Emphasis added.) This is significant because this case clearly deals with an “appropriation of property” through the adoption of the Resolution giving the Levee District the “rights to construct, operate and maintain levees.” We therefore find that La. Const. art.: I, § 4 does not specifically apply to this case.
Rather, for compensation in cases of property appropriated for levees, we must look to La. Const.”art. VI, § 42, which, after its amendment in 2006, provides in pertinent part and with emphasis added:
(A) Compensation. Notwithstanding any contrary provision of this constitution, lands and improvements thereon hereafter actually used or destroyed for levees or levee drainage purposes shall be paid for as provided by law. With respect to lands ' and improvements actually used or destroyed in the construction, enlargement, improvement, or | timodification of federal or non-federal hurricane protection projects, ... such payment shall not exceed the amount of compensation authorized under Article I, Section 4(G) of this constitution.
The legislature has provided statutory law in La. R.S. 38:301, regarding the amount of compensation due when land has been taken, used, damaged, or destroyed for levee purposes. The measure of compen *224 sation in those instances is “fair market value to the full extent of the loss[,]” but if the land is taken for levee purposes byway of a “permanent levee servitude ” then the measure of compensation is “fair market value of the property taken or destroyed before the proposed use ..., without allowing any change in value caused by the construction of the levee [.]” See La. R.S.- 38:301.[6] (Emphasis added.) However, when we examine the statutory definitions of “fair market value” and “full extent of the loss,” we are again brought back to the limit of compensation authorized by La. Const, art. I, § 4(G), which references the Fifth Amendment of the U.S. Constitution. See La. R.S. 38:281(3) and (4).[7]
1,2Additionally, because the Resolution at issue in this case specifically addresses the taking of property for a hurricane protection project, we are once again directed by La. Const, art. VI, § 42, to consider the mandate of the amount of compensation authorized under La. Const, art. I, § 4(G). Louisiana Constitution article I, § 4(G) provides, in pertinent part and with emphasis added:
Compensation paid for the taking of, or loss or damage to, property rights for the construction, enlargement, improvement, or modification of federal or non-federal hurricane protection projects, ... shall not exceed the compensation required by the Fifth Amendment of the Constitution of the United States of America.
Thus, it is readily apparent that every statutory and constitutional reference regarding the proper measure of “just compensation” for property taken or damaged pursuant to a permanent levee servitude, for a hurricane protection project, as was done by the Levee District in this case, has been legislatively restricted and shall not exceed that which is required by the Fifth Amendment. As we previously noted, compensation required by the Fifth Amendment is the fair market value of the property at the time of the taking *225 for public use (in this case, when the property was appropriated). See Horne, 135 S.Ct. at 2432. See also Kirby Forest Industries, Inc. v. United States, 467 U.S. 1, 10, 104 S.Ct. 2187, 2194, 81 L.Ed.2d 1 (1984); United States v. Land, 62.50 Acres of Land More or Less, Situated in Jefferson Parish, State of La., 953 F.2d 886, 890 (5th Cir.1992). We will now discuss the impact of this limitation on the amounts awarded for just compensation in this case.

JUST COMPENSATION

When property is needed for levee purposes, the levee districts of this state can either appropriate or expropriate the necessary property. Wynat Development Co. v. Board of Levee Com’rs For Parish of Orleans, 97-2121 (La.4/14/98), 710 So.2d 783, 785, cert. denied, 525 U.S. 1017, 119 S.Ct. 542, 142 L.Ed.2d 451 (1998). Historically, riparian lands needed for levee purposes could be “taken” without formal expropriation procedures because |i:isuch lands are subject to, a servitude under La. Civ.Code art. 665.[8] Id. The right of appropriation has been characterized as the right to act first and talk later. Dickson v. Board of Com’rs of Caddo Levee Dist., 210 La. 121, 26 So.2d 474, 478 (1946). When a landowner suffers a taking or damage in the absence of a judicial expropriation proceeding, he.may seek compensation through an inverse condemnation action. See Constance v. State Through Dept. of Transp. and Development Office of Highways, 626 So.2d 1151, 1156 (La.1993), cert. denied, 512 U.S. 1219, 114 S.Ct. 2706, 129 L.Ed.2d 834 (1994). Mr. Jarreau’s reconventional demand against the Levee District is such an action for just compensation regarding the taking of his property’s soil for use in construction of the levee.
The trial court in this case discussed the difference between expropriation .and appropriation in oral reasons and concluded that the Resolution adopted by the Levee District on January 10, 2011, effected an appropriation of the Jarreau tract for levee purposes. We agree that the Jar-reau tract was áppropriated. See Wynat Development Co., 710 So.2d at 786. See also Vela v. Plaquemines Parish Government, 2000-2221 (La.App. 4th Cir.3/13/02), 811 So.2d 1263, 1268, writs denied, 2002-1350 (La.6/21/02), 819 So.2d 337 and 2002-1224, 819 So.2d 343 (“Appropriation is the exercise of a pre-existing but previously unexercised public right (the levee servitude in this case) to property, whereas expropriation is the- effort to acquire new public rights to property possessed by a private owner.” Quoting Vela v. Plaquemines Parish Government, 97-2608 (La. App. 4th Cir.3/10/99), 729 So.2d 178, 181.)
|14We also find that the Levee District’s use of the dirt from the Jarreau tract was, in effect, a constitutional “taking” of the property that requires just compensation to be paid to the landowner.[9] See Borgne- *226 mouth Realty Co., Ltd. v. Parish of St. Bernard, 2013-1651 (La.App. 4th Cir.5/21/14), 141 So.3d 891, 897, writs denied, 2014-1285 (La.9/26/14), 149 So.3d 266 and 2014-1351, 149 So.3d 269 (“if property such as the soil itself ... is taken by a political subdivision, such as the ... Levee Board, for public purposes, such as the construction of a levee, just compensation must be paid to the owner.”).[10] (Footnote omitted.) It is clear that Mr. Jarreau is the’owner of the dirt under his tract of land, and he is entitled to just compensation for the taking of his dirt by . the Levee District.[11]. See Borgnemouth Realty Co., 141 So.3d at 897. We are mindful, however, that because this is an appropriation case, not an expropriation case, title to the appropriated property (the Jarreau tract) does not change. See Delaune v. City of Kenner, 550 So.2d 1386, 1389 (La.App. 5th Cir.), writ denied, 553 So.2d 475 (La.1989).
The Levee District argues that the trial court erred in concluding that any compensation was owed to Mr. Jarreau and Bayou Construction for the appropriation, or alternatively, that the trial court erred in awarding more than what the law requires for just compensation. Based on our exhaustive review of the 2006 constitutional amendments and |1Kthe implementing statutes, we find merit in the Levee District’s alternative argument. The trial court determined that just compensation for the Jarreau tract included the fair market value of the 'property plus economic/businéss losses for lost profits associated with the value of the excavated dirt. However, the only amount of compensation that is authorized under current constitutional and statutory law for property taken pursuant to a permanent levee servitude is the fair market value of the property at the time of the appropriation — before the proposed use and without allowing any change in value caused by levee construction. Therefore, we find that the trial court legally erred in awarding econom-ie/business losses to Mr. Jarreau and Bayou Construction on their reconventional demand. See La. R.S., 38:301(C)(l)(h).[12] Due to the legal error, we will conduct a de novo review of the facts and not give deference to the trial court’s findings of fact *227 on valuation. See West Jefferson Levee District, 640 So.2d at 1278.
The fair market value of property taken for public purposes is the price a buyer is willing to pay after he has considered all of the uses to which the property may be put, where such uses are not speculative, remote, or contrary to law. See West Jefferson Levee District, 640 So.2d at 1273. The Louisiana Supreme Court has held that “market value means the worth of the land considered in the light of its best and highest use.” State Through Dept. of Highways v. Rapier, 246 La. 150, 164 So.2d 280, 282 (1964); see also, Borgnemouth Realty Co., 141 So.3d at 901. The current use of the property is presumed to be the highest and best use. West Jefferson Levee District, 640 So.2d at 1275; see also Land, 62.50 Acres, 953 F.2d at 890.
In this case, there is no dispute that at the time of the appropriation in January 2011, Mr. Jarreau was actively using the Jarreau tract for excavating dirt to fulfill contracts connected with his business, Bayou Construction. Mr. Jarreau testified that he purchased the 11fiproperty in 2002 for the specific purpose of operating a-dirt excavation business, and he and his wife moved their home to the property in 2005. .An expert real estate appraiser, Bennet Oubre, testified at trial on behalf of Mr. Jarreau, Mr. Oubre determined the fair market value of the Jarreau. tract on the date of appropriation in January 2011 was $11,869.00, without any consideration for lost profits related, to the value of the dirt in the Jare,au tract.[13] Mr. Oubre concluded that the highest and best use of the appropriated Jarreau tract, as well as the entire 17.1 acres, was the current use as a “dirt pit” operation. He classified the property as a mixed-use tract on the date of appropriation, for both commercial/industrial and residential purposes. Mr. Ou-bre also determined that the Levee District’s appropriation for a permanent levee servitude was paramount to a complete deprivation of any use of the remaining .913 acre Jarreau tract, concluding that there was no reasonable use left for the Jarreau tract after the appropriation.
The Levee District’s expert real estate appraiser, Martin Glynn, testified that the Jarreau tract had a fair market value of $1,820.00. Mr. Glynn used a standard mathematical approach to get the contributory value of the Jarreau tract, concluding that the rear part' of Mr. Jarreau’s property was not as valuable as the front portion along the highway. He stated that there was no sales data on which to base a valuation for the rear acre of property, and the appropriated Jarreau tract had no real value as a stand-alone tract since it was cut off from highway access. Mr. Glynn also found that the highest and best use of the property was multi-use, combining residential, pasturelahd, and commercial. He determined that the front two acres of Mr. Jarreau’s property were the most marketable and the overall value of the entire tract was $11,500.00 per acre.
Another expert real estate appraiser hired by the Levee District was William J. Pousson, Sr. Mr. Pousson appraised the Jarreau tract to be valued at $1,301.00 to $1,425.00, |17based on comparable properties. . Mr. Pousson valued Mr. Jarreau’s entire property to be worth $13,000.00 per acre, but he testified that the rear Jarreau tract that was appropriated was not worth *228 as much as the remaining' parent tract due to the lack of highway and utility access. Mr. Pousson also found that the Jarreau tract had a different highest and best use (dirt pit) than the remainder of Mr. Jar-reau’s property (residential/commercial).
When further questioned, Mr. Jarreau’s expert, Mr. Oubre, explained the difference in his valuation analysis and why he did not separate the rear portion of Mr. Jarreau’s property when he valued the property. He looked at the property as a whole; He disagreed with the approach of the other appraisers, because he said the Jarreau tract was not cut off from highway and utility access until after the appropriation and there were no comparable sales where the rear portion of the tract had been cut off. Mr. Oubre testified that his valuation of the entire property at $13,000.00 per acre was very similar to the other appraisals, and in his opinion, that amount was correct based on comparable market data for sales of the whole property.
Based on the evidence in the record and the testimony of all three experts, we find the valuation of Mr. Jarreau’s property at $13,000.00 per acre to be reasonably supported. We also find that Mr. Oubre’s method of. valuing the entire property without allowing for any change in value caused by the appropriation (cutting the property off from highway access) was correct in' light of the statutory measure of compensation for land taken by way of a permanent levee servitude. See La. R.S. 38:301(C)(l)(h) (fair market value of the property taken or destroyed without allowing any change in value caused by construction of the levee). Since the appropriated portion was' less than an aeré, we accept the valuation of Mr. Oubre for the jarreau tract to be $11,869.00. The trial court also found the Jarreau tract to be worth $11,869.00 as of the date of the appropriation on January 10, 2011. Thus, we affirm that portion of the trial court’s judgment regarding the reconventional demand, awarding Mr. |18Jarreau $11,869.00, less the amount previously tendered by the Levee District, plus interest from the date of the appropriation.
However, as for the portion of the trial court’s judgment awarding Mr. Jarreau and Bayou Construction damages for economic and business losses associated with the appropriation, we must reverse the award of $164,705.40 against the Levee District. The . current law under our amended constitution does not support any award for just compensation beyond the fair market value of the property on' the date of the appropriation, which clearly does not allow compensation for lost profit damages associated with the value of the dirt in the Jarreau tract. :
DAMAGES FOR ‘WRONGFUL” EXCAVATION
We turn now to a discussion regarding the propriety of the $16,956.00 damage award in favor of the Levee District on the main demand. That amount represented the-value of-the dirt excavated by Mr. Jarreau after the date of the appropriation. Mr. Jarreau and Bayou Construction answered the Levee District’s appeal,- contending that the trial court erred in awarding any damages to the Levee District for Mr. Jarreau’s excavation of dirt from the Jareau tract after he received notice of the appropriation.
At issue is the' right to dispose of the dirt on the appropriated Jarreau tract after ' the appropriation and whether Mr. Jarreau interfered with or diminished the use of the Levee District’s 'servitude. Both Mr. Jarreau and the Levee District claim ownership of the,.dirt from the. appropriated property; Mr. Jarreau because he owns the underlying dirt on his proper *229 ty, and the Levee District because it owns the right to a permanent levee servitude on the Jarreau tract pursuant to the Resolution. It is undisputed that Mr. Jarreau excavated dirt from the Jarreau tract after the appropriation. It is also undisputed that Mr. Jarreau stopped his excavations in the area after the trial court issued a permanent injunction on September 20, 2011, prohibiting further removal of dirt from the appropriated levee servitude area.
|1flThe Resolution dated January 10, 2011, states that the permanent levee servitude appropriated “shall vest in the [Levee District] the rights to construct, operate and maintain levees, ... including the right to cut away, dredge or remove spoil or earth therefrom ... as may be necessary in the construction, operation and maintenance of said levees ... for the ... Hurricane Protection Project.” (Emphasis added.) There was testimony at trial by the general manager and executive secretary for the Levee District, Windell A. Curóle, that the Levee District needed the dirt for construction of the levee in order to increase flood protection for the area. Mr. Curóle further testified that the “main reason” for the appropriation was to take the dirt from the properties. Neil Angelette, a civil engineer and surveyor for the Levee District, was accepted as an expert witness by the trial court. Mr. Angelette testified that the Levee District had planned to excavate 9,500 cubic yards of dirt at a depth of six-to-eight feet across the Jarreau tract for use in constructing the levee.
Mr. Angelette stated that he was asked to survey the excavation activities on the Jarreau tract several times, first in mid-January 2011, and then again in June and July 2011. In January 2011, it was observed that an estimated 185 cubic yards of dirt was stockpiled on the Jarreau tract, but Mr. Angelette did not know the exact origin of the stockpiled dirt. A few months later in June, Mr. Angelette estimated that 2,800 cubic yards had been excavated from the appropriated area, and a new hole/pond was observed in the area. In July 2011, a third survey was conducted, resulting in an updated estimate — the total amount of dirt removed from the appropriated area since January was approximately 2,826 cubic yards.
Mr. Jarreau testified that there was a pond in the appropriated area that actually existed before the appropriation in January 2011, and was the result of his excavation work prior to the appropriation. He further stated that he dug the top two feet of dirt from the area before the appropriation. Additionally, Mr. Jareau testified that he commonly dug his dirt pits to a depth of 15 to 20 feet. Mr. Jarreau stated that he had “no idea on the quantity” of dirt he had excavated prior to the appropriation, and that he often stockpiled dirt all along his 17.1 acres |2nof land to allow the dirt to dry before delivery to a customer. Mr. Jarreau claimed that he misunderstood the meaning of the letter he had received from the Levee District, and he believed that he could continue to perform his excavation work since he refused the check tendered by the Levee District and did not want to donate his property. Mr. Jarreau estimated that he could have excavated 23,000 cubic yards of dirt from the Jarreau tract, which was enough to meet the obligations of one of his outstanding contracts for Bayou Construction.
The permanent levee servitude that burdened Mr. Jarreau’s property was not only a legal public servitude, but a predial servitude. See La. Civ.Code art. 646 (“A predial servitude is a- charge on a servient estate for the benefit of a dominant estate”) See also La. Civ.Code art. 654 (“Predial servitudes may be natural, legal, *230 and voluntary or conventional.... - [Lie-gal servitudes are imposed by law.”) Legal servitudes are limitations on ownership established by law .for the benefit of the general public. La. Civ.Code art, 659,
The legal servitude at issue was appropriated through the Resolution and vested the Levee District with the right to use soil from the Jarreau tract “as may be necessary in the construction, operation and maintenance” of the levee for the purpose of a hurricane protection project. Mr. Jarreau retained the title to his appropriated land. Jurisprudence requires that any limitations on the use of appropriated land must-be expressed, and in this case, the expression would necessarily have been in the Resolution. See Plaquemines Parish Commission Council v. Hero Lands Co., 388 So.2d 790, 792 (La. 1980). A review of the actual appropriating language of the- Resolution reveals nothing that limits Mr. Jarreau’s use of his land, including the dirt-beneath the surface of his land. -However, there is a reference at the -end of the Resolution concerning the notification ¡to be .mailed by the Levee District to all of the landowners. In that regard, the Resolution directs that the.notice should demand that the landowners “immediately-cease, and- desist performing any and all activities- upon the property appropriated.” It is this language .that presumably led the trial court to issue the permanent injunction preventing Mr. Jar-reau from further excavation work..
12tMr. Jarreau does not contest the validity of the injunction issued by the trial court; instead, he seeks reversal of the damage award for the alleged “wrongful excavation” of dirt from the appropriated property. Mr. .Jarreau’s primary argu-mentjs that the Lev.ee District failed to establish the amount 'of dirt that Mr. Jar-reau actually removed after the appropriation in January- 2011. We agree there is no definitive amount established as to the actual amount of dirt excavated after the appropriation, but the Levee District’s expert .witness, Mr. Angelette, estimated that approximately 2,826 cubic yards of dirt had been removed from the Jarreau tract between January and July 2011. This testimony was uncontroverted.
The more pertinent issue, however, is whether Mr. Jarreáu’s excavation of approximately 2,826 cubic yards of dirt after the appropriation actually interfered with the exercise of the Levee District’s permanent levee servitude. In connection with legal servitudes, the law obligates the owner of the servient estate (Mr, Jarreau in this case) to keep his estate fit for the purposes of. the servitude, which in this case -involved the use of the dirt that was necessary for construction of a levee. See Comment (b) of,the 1977 Revision Comments for La. Civ.Code art. 651, providing in part:
The owner of the servient estate is not required to do anything. His obligation is to abstain from-doing something on his estate or to.permit something to be done on it. He may be required by .convention or by law to keep his estate in .suitable condition for the exercise of the servitude due to the dominant estate. [Emphasis added.] . :
Further, the “owner of the'servant estate 'may do nothing tending1 to diminish or make more inconvenient1 the use of the servitude,” La. Civ.Code art. 748; The very essence of a'predial servitude -is1 that the dominant estate has a right to do something which may limit the use of .the servient estate. Dautreuil v. Degeyter, 436 So.2d 614, 618 (La.App. 3d Cir.1983), As explained in Comby v. White, 98-1437 (La.App. 3d Cir.3/3/99), 737 So.2d 94, 97, “[i]nterference with the use and enjoyment of a servitude by the owner of the servient estate entitles the owner of *231 the dominant estate to damages.” Further relief in the form of an 1 ¡^injunction may also be available. Buckhorn Ranch, L.L.C. v. Holt, 2008-1509 (La.App. 3d Cir.5/6/09), 10 So.3d 367, 372, writ denied, 2009-1263 (La.9/18/09), 17 So.3d 977.
Thus, a determination must be made as to whether Mr. Jarreau’s removal of dirt after the appropriation took place rendered the Jarreau tract unsuitable for the Levee District’s exercise of the servitude or somehow diminished or made the use of the servitude more inconvenient for the Levee District. While we recognize that evaluation of the underlying facts upon which a damage award is based is the manifest error standard of review, the evaluation of the amount awarded is subject to the abuse of discretion standard. See Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Our review of the record does not reveal any evidence tending to show that the Levee District was deprived of the necessary amount of dirt needed from the Jarreau tract or suffered any inconvenience connected with the use of the levee servitude on the Jarreau tract.
The only testimony regarding the amount of dirt the Levee District planned to excavate from the Jarreau tract was offered by Mr. Angelette, who testified that the Levee District’s plan was to dig to a depth of six-to-eight feet across the Jar-reau tract for a total of 9,500 cubic yards of dirt. Further, Mr. Jarreau’s uncontra-dicted testimony was that he could have excavated 23,000 cubic yards of dirt from the appropriated area and he commonly dug his dirt .pits anywhere from 15 to 20 feet.[14] Since Mr. Angelette estimated that Mr. Jarreau had only removed 2,862 cubic yards of dirt after the appropriation, it follows that there was a surplus of dirt still available in the Jarreau tract for the Levee District to exercise its right to use the dirt that it estimated was necessary for constructing the levee.
| ¡.¡¡Therefore, we find the trial court erred in determining that the Levee District’s servitude was interfered with or ■diminished in any way by Mr. Jarreau’s actions after the Jarreau tract was appropriated. The record reveals that no losses were sustained by the Levee District. Consequently, we conclude that monetary damages in favor of the Levee District for Mr. Jarreau’s wrongful excavation after the appropriation took place was improper, not reasonably supported by the record, and a clear abuse of the trial court’s discretion.[15] The injunctive relief, was the only remedy 'available to the Levee District under these particular facts. ' We therefore reverse the $16,956.00 damage award' to the Levee District.

ATTORNEY FEES

In their answer to the Levee District’s appeal, Mr. Jarreau and Bayou. *232 Construction maintain that the trial court erred in awarding attorney fees pursuant to La. R.S. 38:301(C)(2)(f) (reasonable, attorney fees shall not exceed 25% of the difference between the compensation awarded in a judgment and the amount found to be due by the Levee District), rather than La. R.S.' 13:5111 (reasonable attorney fees actually incurred in a proceeding, other than an expropriation, for compensation resulting from the taking of property). Also, Mr. Jarreau and Bayou Construction seek an additional award of attorney fees incurred as a result of this appeal. An appellate court reviews an award -of attorney fees for an abuse of discretion. Covington v. McNeese State University, 2012-2182 (La.5/7/13), 118 So.3d 343, 348, writ denied, 2012-2231 (La.1/17/14), 130 So.3d 338.
It is well settled that attorney fees are not'allowed for the prevailing party except where authorized by statute or contract. State, Dept., of Transp. and Development v. Wagner, 2010-0050 (La.5/28/10), 38 So.3d 240, 241. In a similar inverse condemnation case involving the use of soil and dirt borrowed from property that had been appropriated for | ^construction of a levee (but prior to the 2006 constitutional amendments), it was determined that the governing statute providing for attorney fees is La. R.S. 13:5111. Olivier Plantation, L.L.C. v. Parish of St. Bernard, 2013-0497 (La.App. 4th Cir.10/30/14), 151 So.3d 965, 969-970, writs denied. 2014-2496 and 2014-2573 (La.2/27/15), 160 So.3d 173 (relying on the same holding as in Borgnemouth Realty Co., 141 So.3d at 902-03). Louisiana Revised Statutes 13:5111 provides, in pertinent part:
A. A court of Louisiana rendering a ; judgment for the plaintiff, in a proceeding brought against the state of Louisiana ... or other political subdivision ... for compensation for the taking of property by the defendant, other than through an expropriation proceeding, shall determine and award to the plaintiff, as a part of the costs of court, such sum as will, in the opinion of the court, compensate for reasonable attorney fees actually incurred because of such proceeding. [Emphasis added.] ■
Thus, the attorney fees awarded to Mr. Jarreau and Bayou Construction in this case are mandated by statute to be those reasonable fees that are actually incurred because of the proceeding, in this case the reconventional demand, brought for compensation for the taking of property by means of an appropriation. We conclude that the trial court erred in applying the statute that applies to expropriation proceedings (La. R.S. 38:301) rather than R.S. 13:5111 that applies to proceedings other than expropriation, such as appropriation or inverse condemnation. See St. Tammany Parish Hosp. Service, Dist. No. 2 v. Schneider, 2000-0247 (La.App. 1st Cir.5/11/01), 808 So.2d 576, 582-83 (“the legislature has addressed the inverse condemnation situation by statutorily providing for the award of attorney fees in such cases ... See LSA-R.S. 13:5111”). This holding is in accord with the rules on statutory analysis outlined supra, where we noted that the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character. Oubre, 79 So.3d at 997. Therefore, we must amend the trial court’s attorney fees, award to Mr. Jarreau and Bayou Construction.
At trial, Mr. Jarreau and Bayou Construction introduced evidence through their counsel of record showing that the actual amount of attorney fees incurred was $142,551.50. 1 ¡.¡¡That amount was not contradicted by the Levee District and the *233 trial court did not find it to be unreasonable before incorrectly applying a cap on the fees. Because of the trial court’s error of law, we must determine de novo whether attorney fees in the amount of $142,551.50 are reasonable under these circumstances. The Louisiana Supreme Court has set out factors to be considered by a court in determining the reasonableness of an award of attorney fees: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance, of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court’s own knowledge. See State, Dept., of Transp. and Development v. Williamson, 597 So.2d 439, 442 (La.1992).
. Considering the factors for reasonableness that are particular to this case, we are impressed with the time, diligence, and skill of the attorneys pursuing just compensation for Mr. Jarreau and Bayou Construction in the face of unyielding resistance on the part of the Levee District. The case is difficult .in that it involves a res nova application of constitutional amendments and specialized knowledge on expropriation and appropriation procedures. The result obtained was a very good one at the trial court level in that Mr. Jarreau was awarded compensation for the taking of his property. Based on our review of the record and the facts and circumstances of this case, we conclude that $142,551.50 is a reasonable amount for an attorney fees award.
Additionally, given that La. R.S. 13:5111 envisions reimbursement to the landowner for reasonable. attorney fees actually incurred as a result of the proceeding seeking compensation .for the taking of property, and this appeal is clearly a part of the proceeding, we find that Mr. Jarreau and Bayou Construction are entitled to additional attorney fees for their appeal. See Torn of Walker v. Stafford, 2001-2188 (La.App. 1st Cir.10/18/02), 833 So.2d 349, 355, writs denied. 2003-0441 (La.4/25/03), 842 So.2d 400 and 2003-0524 842 So.2d 405; State, Dept. of Transp. and Development v. Illinois Cent. Gulf B. Co., 464 So.2d 401, 404 (La.App. 1st Cir.1985).
Further, an increase in attorney fees is generally granted when a party who was awarded attorney fees in the trial court is forced to and successfully defends against an appeal. Bergeron v. Watkins, 98-0717 (La.App. 1st Cir.3/2/99), 731 So.2d 399, 405. This court can evaluate the work of counsel and make an award of attorney fees for work at the appellate level. The appeal perfected by the Levee District necessitated additional work for Mr. Jarreau and Bayou Construction’s attorneys, including the preparation of an answer to the appeal, preparation of appellate briefs on the appeal and an exception filed in this court by the Levee District, as well as preparation for oral argument before this court. Under the circumstances, we find that $5,000.00 is a reasonable attorney fee award for appellate work in this case; thus, we amend the judgment to award Mr. Jarreau and Bayou Construction an additional $5,000.00 in attorney fees for the appeal of this case.

CONCLUSION

For the assigned reasons, we affirm the trial ■ court’s judgment in part as to the award of $11,869.00 in favor of Mr. Jar-reau and against the Levee District; we reverse in part as to the $164,705.40 award to Mr. Jarreau and Bayou Construction for economic and business losses; - and we reverse in part as to the damage award of $16,956,00 in favor of the Levee District. *234 As for the attorney fees award, we affirm the judgment as amended to reflect the actual attorney fees incurred in the trial court in the amount of $142,551,50, plus an additional $5,000.00 for attorney fees incurred on appeal, all to be awarded to Mr. Jarreau and Bayou Construction, plus legal interest from the date of this judgment until’ paid. All other portions- of the trial court judgment are affirmed. Considering our decision on the merits, we hereby deny the Levee District’s peremptory exception of no cause of action. Costs of this appeal in the amount of $6,001.10 are assessed equally between plaintiff/defendant-in-reconvention, 127South Lafourche Levee District, and defendants/plaintiffs-in-reconvention, Chad M. Jarreau and Bayou Construction & Trucking, L.L.C.
PERMPTQRY EXCEPTION OF NO CAUSE OF ACTION DENIED; TRIAL COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AFFIRMED AS . AMENDED IN PART, AND RENDERED.
PETTIGREW, J. concurs.
GUIDRY, J„ dissents in part and assigns reasons.
DRAKE, J., concurs in the result.
, CRAIN, J., agrees in part concurs in part, dissents in part, and assigns reasons.

.We are aware of' another pending appeal, concerning a class action filed by some owners of the other 355 tracts of land appropriated by the Levee District in connection with the same levee project at issue in this case. See Adams v. South Lafourche Levee District, 2015-0507 (La.App. 1st Cir.6/27/16). However, Mr. Jarreau and Bayou Construction seemingly have opted out of the aforementioned class action.

. The record does not contain a copy of the permanent injunction that was apparently is- . sued pursuant to a consent judgment signed on September 20, 2Q11.

. The trial court gave' a .credit for the $1,326.99 amount previously tendered by the Levee District to Mr. Jarreau, for a total award of $10,542.01 for the Jarreau tract.

. Our review of the parties’ arguments at trial and post-trial memoranda filed prior to the trial court’s ruling on the merits reveals that neither the parties nor the trial court considered the impact of the 2006 amendments to La. Const, arts. I and VI, which went into effect prior to the Levee District’s appropriation pursuant to the Resolution in this case.

. Louisiana Revised Statute 13:5102(B)(1) defines a "political subdivision” as any "parish, municipality, special district, ,.. district, ... agency, ... of any kind which is not a state agency.” As a "special district” of the state, the South Lafourche Levee District is a political subdivision. See Wynat Development Co. v. Board of Levee Com’rs For Parish of Orleans, 97-2121 (La.4/14/98), 710 So.2d 783, 789-90, cert. denied 525 U.S. 1017, 119 S.Ct. 542, 142 L.Ed.2d 451 (1998). See also La. R.S. 38:281(6) defining “Levee district” as "a political subdivision of this state organized for the purpose and charged with the duty of constructing and maintaining levees, and all other things incidental thereto within its territorial limits.”

. Louisiana Revised Statutes 38:301 provides, in pertinent part, with emphasis added:
A. (1) The levee boards ... may construct and maintain levees ... and do all other things incidental thereto.
⅜
C. (l)(a) All lands, exclusive of batture, and improvements hereafter actually taken, used, damaged, or destroyed for levee or levee drainage purposes shall be paid for at fair market value to the full extent of the loss.
⅜ * ⅜
(h) The measure of compensation for lands and improvements taken or destroyed for levee and levee drainage purposes by way of a permanent levee servitude shall be the fair market value of the property taken or destroyed before the proposed use of the property or construction of the levee facilities, without allowing any change in value caused by the construction of the levee facilities. ...
(i) The compensation for a permanent levee servitude defined herein shall apply to all lands, exclusive of batture, and improvements appropriated, taken, used, damaged, or destroyed for levee purposes after the effective date of this Act.

. Louisiana Revised Statutes 38:281(3) defines "fair market value” as: “the value of the lands or improvements actually taken, used, damaged or destroyed for levees_Pursu-ant to Article 1, Section 4(G) and Article VI, Section 42(A) of the Constitution of Louisiana, such determination of fair market value shall not exceed the compensation required by the Fifth Amendment of the Constitution of the United States of America!.]” (Emphasis added.)
Similarly, the definition for "full extent of the loss” in La. R.S. 38:281(4) also refers to the constitutional provision for compensation, stating in pertinent part, that "payment for the full extent of the loss shall not exceed fair market value and shall not exceed the compensation required by the Fifth Amendment of the Constitution of the United States of America!.]” (Emphasis added.)

. Louisiana Civil Code article 665 provides, as amended and reenacted by Acts 2006, No. 776, § 1:
Servitudes imposed for the public .or common utility relate to the space which is to be left for the public use by the adjacent proprietors on the shores of navigable rivers and for the making and repairing of levees, roads, and other public or common works. Such servitudes also exist on property necessary for the building of levees and other water control structures on the alignment approved by the U.S. Army Corps of Engineers as provided by law, including the repairing of hurricane protection levees...
All that relates to this land of servitude is determined by laws or particular regulations. [Emphasis added.]

. The Louisiana Supreme Court in State, Through Dept. of Transp. and Development v. Chambers Inv. Co., Inc., 595 So.2d 598, 602-03 (La. 1992), defined a “taking” as "any substantial interference with the free use and *226 enjoyment of property/' and set forth a three-prong test to assist in establishing whether a constitutional taking has occurred, ' The factors for the court to decide are as follows: (1) whether a person’s legal right with respect to a thing or an object has been affected; (2) whether the property, either a right or a thing, has been taken or damaged, in a constitutional sense; and (3) whether the taking or damaging was for a public purpose, It is clear that Mr, Jarreau's right to excavate the dirt on his tract has been severely affected by the Levee District's appropriation of a permanent levee servitude (public purpose) and the injunction prohibiting him from further excavation on a portion of his property that has been used exclusively in Mr. Jarreau’s dirt pit business.

.The Borgnemouth Realty Co, case, is distinguishable from the case sub judice in. two important respects: (1) at the time that the property, was taken in Borgnemouth Realty Co., La. Const art.'l, § 4(G) had not been added; thus, the landowner was entitled to be compensated to the full extent of his loss as provided prior to the effective date of the 2006 constitutional amendments; and (2) the appropriating documents in Borgnemouth Realty Co. made no specific mention about using the appropriated land for soil to construct the levee. See Borgnemouth Realty Co., 141 So.3d at 897, n. 5, and at 898-99.

. Thus, we deny the Levee District’s exception of no cause of action that was filed in this court, because the law clearly extends a remedy to Mr. Jarreau for the taking of his dirt.

. As we discussed suprci, the policy of compensating those whose property is adversely affected by appropriation is embodied in article VI, § 42 of the Louisiana Constitution, .and the statute that implements this policy is La. R.S. 38:301. See Vela, 811 So.2d at 1269,

. After comparing multiple similar-sized properties, Mr. Oubre concluded that the value of Mr. Jarreau’s-property was $13,000.00 per acre; however, the valuation of $11,869.00 resulted because the appropriated portion of Mr. Jarreau’s property was a little less than an acre.

. A certified public accountant, Charles C. Theriot, testified as an expert witness on behalf of Mr. Jarreau and Bayou Construction, Mr. Theriot referenced a report of a civil and environmental engineer, Danny J. Hebert, when he estimated that 23,614 to 28,380 cubic yards of dirt could have been excavated from the appropriated property within a year’s time, at a depth of 15 to 20 feet respectively. This evidence was not refuted.

, The trier of fact is given great discretion in determining damage awards. See La. Civ. Code-art. 2324.1. There is no mechanical rule for determining general damages. The facts and- circumstances of each case must control. The initial inquiry is whether the award for the injuries and their effects under the particular circumstánce of the injured party is a clear abuse of the great discretion of the trier of fact. Brown v. Williams, 36,863 (La.App.2d Cir.7/31/03), 850 So.2d 1116, 1124, writ denied, 2003-2445 (La. 11/21/03), 860 So.2d 555; Summarell v. Ross, 27,160 (La.App.2d Cir.8/23/95), 660 So.2d 112, 116.